GEORGE COLGROVE, Appellant, *v.* CHARLES TALLMAN, Impleaded, etc., Respondent.

Where one of two copartners purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, as to such debts the former becomes in equity the principal debtor and the latter a surety; and this relationship a firm creditor having notice of the agreement is bound to observe.

Where a creditor, having such notice, is requested by the partner, who thus became surety, to collect his claim, and he refuses or neglects so to do, if, at the time of the request, the principal was solvent and able to pay, but thereafter becomes insolvent, the surety is discharged.

(Argued September 21, 1876; decided October 3, 1876.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee, and granting a new trial. (Mem. of decision below, 5 Hun, 103.)

This was an action upon a promissory note, made by the firm of H. C. Barnes & Co., of which firm defendants were sole partners.

The note was given October 3, 1863, payable "fifteen days demand after date." About June 21, 1864, defendant, Tallman, sold out all his interest in the partnership property and effects to defendant Barnes, who agreed to assume and pay all the firm debts. A few days thereafter Tallman notified plaintiff, who then held the note, of the agreement, and requested him to proceed and collect the note, immediately. Barnes was, at the time, solvent and able to pay. He failed in 1866, made an assignment and was thereafter, up to the time of trial, hoplessly insolvent. Plaintiff made a demand in June, 1865, but made no effort to collect the note until after the failure.

*Charles Stevens* for the appellant. The original liability of partners to creditors of a firm continues after a dissolution

thereof, without regard to agreement of dissolution. (Story on Part., chap. 8, § 158; Pars. on Part. [2d ed.], 437; *Smith* v. *Rogers*, 17 J. R., 340; *Winnie* v. *McCullough*, 1 Sandf. Ch., 370; *Vernam* v. *Harris*, 1 Hun, 451; *Morse* v. *Gleason*, 2 id., 31; 32 N. Y., 501.)

*D. Pratt* for the respondent. Tallman became the surety of Barnes for the payment of the debt in suit, and was entitled to all the rights of a surety. (2 Lans., 97; *Savage* v. *Putnam*, 32 N. Y., 501; *Millerd* v. *Thorn*, 56 id., 402; *Cornell* v. *Prescott*, 2 Barb. 16; *Kenney* v. *McCullough*, 1 Sand. Ch., 370; *Waddington* v. *Vredenburgh*, 2 J. Cas., 227; *March* v. *Bike*, 10 Paige, 595; 13 Vt., 81; *Morse* v. *Gleason*, 2 Hun, 32; *Matthews* v. *Aikin*, 1 Com., 595; *Hayes* v. *Ward*, 4 J. Ch., 130; *Hodgesen* v. *Shaw*, 3 M. & K., 183; *Craythorne* v. *Swinburne*, 14 Ves., 150.) Any arrangement between the creditor and Barnes changing or modifying the original contract discharged Tallman. (*Bangs* v. *Strong*, 7 Hill, 250; *Grant* v. *Smith*, 46 N. Y., 93; *Guion* v. *Knapp*, 6 Paige, 25; *Reynolds* v. *Ward*, 5 Wend., 501; *Archer* v. *Douglass*, 3 Den., 512; *Bangs* v. *Mosher*, 23 Barb., 478; *Mantepoise* v. *Lloyd*, 15 C. B. [N. S.], 203; *Banks* v. *McDonald*, 3 H. L. Cas., 226; Story's Eq. Jur., 324–327; *Neinscewicz* v. *Gahn*, 3 Paige, 651; *Guion* v. *Knapp*, 11 Wend., 312, 323; 56 N. Y., 402; 2 Hun, 31.)

FOLGER, J. By the dissolution of the copartnership, of which Barnes and Tallman were the members, and the transfer of all the property to Barnes, and his agreement with Tallman to pay all the debts of the firm; Tallman became in equity, as between himself and Barnes, a surety, for Barnes as principal debtor in those debts. (*Millerd* v. *Thorn*, 56 N. Y., 402; *Savage* v. *Putnam*, 32 id., 501; *Kinney* v. *McCullough*, 1 Sandf. Ch. R., 370; *Morss* v. *Gleason*, 64 N. Y., 204.)

When it was made known to Colgrove by Tallman, that Barnes and Tallman had gone into the bargain, which was

thus made between them, Colgrove became bound to Tallman in equity to observe it. Thus, if he had made with Barnes, a valid agreement to extend the time of payment of the note made to him by the firm, Tallman would have been discharged. (56 N. Y., *supra*.) This could be, only on the ground that extension of time of payment of a debt, granted by a creditor to a principal debtor, acts as a discharge of a surety of the debt, from his liability thereon.

It is recognized as resting upon this principle, in *Oakley* v. *Pashelee* (10 Bligh. New Par. R., 548). It was there argued for the creditor, that the doings of his debtors among themselves could not alter his rights, (page 580), and that a partner retiring, with an agreement for indemnity from his copartner, was not thereby converted into a surety, (page 581). But it was ruled that he was. The opinion given by Lord LYND-HURST, in the House of Lords, is : That the representatives of the retiring partner stood in the character of sureties (page 590), which the creditor was bound to observe, having had notice of the dealings between the partners, his original debtors ; and see *Morss* v. *Gleason* (*supra*), as bearing upon this point. It is urged here, that the consent of the creditor is needed to create these new relations between him and his debtors ; but the English case above cited does not make that a necessary fact. Nor are there lacking other instances in the law, wherein the action of third parties among themselves, has changed the relations of the creditor to them, without his assent thereto, and has created equities in favor of all or one of them, which he was bound to regard, and to refrain from injuring by his action or omission. Thus, if the equity of redemption of mortgaged premises is sold on execution by a judgment creditor of the mortgagor, and then the mortgagee, having also a bond for his debt, seeks to enforce it out of property of the mortgagor other than the lands mortgaged, he will either be stayed, or forced to make over the debt and security to the mortgagor, so that he may save himself out of the premises. (Per KENT, Ch., *Tice* v. *Annin*, 2 J. Ch.,

125–8; see a kindred case, *Ferris* v. *Crawford*, 2 Denio, 595.) So, too, if a mortgagor conveys part of the mortgaged premises subject to the whole mortgage, the part sold is first liable for the debt, *i. e.*, it becomes the principal debtor; and the mortgagee must exhaust it before he can seek other property of the mortgagor, who has become in equity the surety. (*Halsey* v. *Reed*, 9 Paige, 446.) And what comes close to this case in principle, and shows that a creditor must care for equities growing from new relations, arising out of changes made without his assent, is this: If several lots are mortgaged, and after that have come to different owners, and the mortgagee releases some of them, he may not enforce against those not released, more than a proportionate amount of the mortgage debt; the creditor, says the chancellor, owes a duty to his debtors, not to impair their rights as against each other. (*Stevens* v. *Cooper*, 1 J. Ch., 425.) This rule has been reiterated, with the requirement that the creditor must have notice of the change sufficient to put him on inquiry. (*Howard Ins. Co.* v. *Halsey*, 8 N. Y., 271; and see *Guion* v. *Knapp*, 6 Paige, 35; *Stuyvesant* v. *Hall*, 2 Barb. Ch., 151.) The reason is, that the parcels sold have become as sureties to the parcels not sold. The latter are as principals. A release of them is as a release of a principal debtor, which discharges the surety. To the same end is the rule, that a creditor having a lien upon two funds, will be forced, in favor of an after lienor having a claim upon one of the funds only, to seek his debt from the other fund. (*Chesebrough* v. *Millard*, 1 J. Ch., 409.) And if he does aught to prejudice the claim upon the one fund of the after lienor, after notice of the lien, he will to that extent be cut off from his own claim upon that fund.

In equity, then, the relations of the parties to this case, are that Barnes is the principal debtor, Tallman his surety for the payment of the debt, and Colgrove their creditor, of one as the principal debtor, of the other as surety. These relations existed, as soon as Tallman gave notice to Colgrove, of the dissolution of the partnership and the agreement between him

and Barnes. Each of them was, after that, affected by all the rules applicable to persons in those relations.

It is the settled law of this State, and one of the rules of the relations of creditor, principal debtor and surety, that the surety, while the principal is solvent and can be made to pay the debt, may require of the creditor that he collect it of the principal, and if the creditor refuses or neglects so to do, and the principal becomes insolvent and unable to pay, the creditor may not then have his debt of the surety; it is expressly so declared in *Pain* v. *Packard* (13 J. R., 174), *King* v. *Baldwin* (17 *id.*, 384), *Remsen* v. *Beekman* (25 N. Y., 552); and treated as settled in *Manchester Manufacturing Company* v. *Sweeting* (10 Wend., 163); and though questioned, yet not denied in *Warner* v. *Beardsley* (8 Wend., 194) and *Herrick* v. *Borst* (4 Hill, 650); limited in *Trimble* v. *Thorne* (16 J. R., 151), and by ANDREWS, J., in *Wells* v. *Mann* (45 N. Y., 327), so as not to include indorsers and guarantors by independent collateral contract; and recognized by CHURCH, Ch. J., in *Hubbard* v. *Gurney* (64 N. Y., 457).

And surely the reasons for the rule apply to the case in hand. We have shown that the relation of surety was created in Tallman. A surety is discharged in such case, because it is the duty of the creditor to obtain payment in the first instance of the principal debtor, and not of him who is surety; it is right that the principal should pay the debt; it is inequitable and unjust for the creditor, by delaying to sue, to expose the surety to the hazard arising from a prolongation of the credit; and the creditor is under an equitable obligation to obtain payment from the principal, and not from the surety, unless the principal is unable to pay. (Per SPENCER, Ch. J., *King* v. *Baldwin, supra;* per WRIGHT, J., 25 N. Y., *supra.*) These reasons apply in full force here. Tallman had given up to Barnes, and put out of his own control all of the property of the firm, and had given Colgrove notice, and requested him to collect the debt. The facts of the case bring the parties within the rule above noticed, and set it in operation against the plaintiff.

Upon this ground, without considering any other question in the case, the order of the General Term should be affirmed and judgment absolute rendered against plaintiff on stipulation, with costs.

All concur.

Order affirmed and judgment accordingly.