HEARD APRIL TERM, 1878.

## JACKSON *vs.* PATRICK.

Where the principal debtor made an assignment of his estate for the benefit of his creditors, a surety for one of the debts secured by the assignment *held* not to be discharged, there being no proof that the creditor had done any positive act affecting injuriously his interest, though he had attended a meeting of the creditors called to determine whether an agent should be appointed.

To discharge a surety, it is necessary that the creditor should do some positive act which has that effect, and not merely that he should be passive; or that he should omit some duty to the surety which he was bound to perform.

Where a party sued at law has a valid defense to the action which he neglects to make, and allows judgment to be taken against him, he cannot afterwards maintain an equitable proceeding to be relieved from the judgment.

Where a judgment debtor, served with a rule to show cause why the execution should not be renewed, has a valid defense which he neglects to make, he is estopped by the judgment renewing the execution, and cannot afterwards be relieved therefrom.

BEFORE KERSHAW, J., AT YORK, SEPTEMBER TERM, 1877.

Action by Samuel W. Jackson against J. C. Patrick.

The case will be sufficiently understood from the decree of the Circuit Court and the opinion of this Court.

The decree of His Honor the Circuit Judge is as follows:

KERSHAW, J. This action was brought on to be heard at the September Term of the Court of Common Pleas for York County, 1877.

Upon the evidence submitted, and the statements of the complaint, not denied by the answer, I find, as matters of fact:

1. That on the 8th day of September, 1859, plaintiff, as surety for R. L. Simmons and R. P. Jackson, executed with them a joint and several promissory note, to one W. R. Moore, in the sum of six hundred and twenty-five dollars.

2. That on the 19th day of November, 1860, the said note being then still unpaid, the said firm of Simmons & Jackson executed a

deed of assignment of all their property and choses in action, in trust for the benefit of all their creditors, (the debt due by said note being in the first class of preferred debts under said assignment,) to Melton & Melton, as assignees and trustees.

3. That on the 29th of November, 1860, R. L. Simmons, of the said firm, executed a deed of assignment of all his real and personal property to Samuel W. Melton, of the said firm of Melton & Melton, for the payment, first, of all his individual debts, and, secondly, to pay any balance of the debts of Simmons & Jackson remaining due after the execution of the trusts of the deed of assignment of Simmons & Jackson, above mentioned, in the same order of preferment.

4. That said deeds of assignment were duly delivered and recorded, and the execution of the trusts therein was duly assumed by the said assignees.

5. That there were no conditions of release, or unlawful reservation of any interest in the said assignors, stipulated in said assignment, and no release required.

6. That a meeting of creditors was called under those assignments, and was attended by the said W. R. Moore, and at said meeting it was determined by the creditors that they would appoint no agent to act with the assignees, but they left the execution of the trusts to the said assignees.

7. That no other meeting of creditors was held under the assignments, and no further steps were taken by them to secure their rights under the assignments.

8. That a sufficient amount of property passed to the assignees, under the said assignments, to pay the preferred debts, including the said promissory note.

9. That the assignees sold the assigned property, with the consent of the meeting of creditors, but no report of their proceedings was ever made by the assignees.

10. That in October, 1861, a judgment was obtained by the said W. R. Moore, against the plaintiff, upon the said promissory note, and an excution was duly entered upon the same, October 31st, 1861.

11. That the said W. R. Moore died on the 15th day of August, 1867, and letters of administration of his estate were granted to J. C. Patrick, the defendant, on the 9th day of March, 1868, by the Ordinary of York County.

12. That defendant obtained a renewal of said execution, after due service of notice and summons, at September Term of this Court for 1875, and said renewed execution was issued on the 7th of December, 1875, and a levy made thereunder the same day.

13. That said W. R. Moore received fifty dollars from the attorneys of said assignees October. 23d, 1866, to be applied to his said judgment.

14. That plaintiff obtained an order from the Judge of the Sixth Circuit December 20th, 1875, restraining further proceedings upon said judgment until the further order of this Court, and commenced this action, to be relieved from said judgment, on the ground that the surety, the defendant's intestate, has been discharged by the conduct of defendant.

The grounds urged in support of the action are, briefly:

That W. R. Moore accepted under the assignment;

That he virtually appointed the assignees his agents;

That the assignees were the depositaries of the creditors, and the funds were thus under their control;

That the funds assigned may be regarded as collateral security for the debt;

That this security having been lost through the neglect of the creditor, under the circumstances the surety was discharged.

I will present the views I entertain on these several points in the order in which they occur to me.

There can be no doubt that a debtor before judgment has authority to make an assignment under our laws whereby his property may be converted into a trust fund for the payment of debts, and so placed beyond the reach of the ordinary process of law, and that he might create arbitrary preferences between his creditors in the order of payment. At least it will not be denied that he could do so before the adoption of the bankrupt laws.—*Niolon* vs. *Douglas*, 2 Hill's Ch., 443; *Smith* vs. *Campbell*, Rice, 366.

Had W. R. Moore, in this case, declined to accept the benefit of the assignment, he could have derived no advantage thereby, and by his acceptance he has lost none. There was no condition of release in this assignment, and by accepting he impaired no remedy he then had against the principal debtor. Hence, so far as the act of acceptance goes, the surety *might* have been benefited, and could not have been injured.

The action of the meeting of creditors, of which Moore was one, did not have the effect of changing the character of the assignees and converting them into mere agents of the creditors.

Moore acquired no more control over them than he would have had had that meeting not been held. The effect of their action in this regard was merely to decline to appoint agents to act with the assignees, as they might have done under the Act of 1828.— 6 Stat., 366.

It does not appear in the testimony that the creditors were in error when they contented themselves with leaving their interests in the hands of the eminent counsel composing the firm of Melton & Melton, the assignees, except as an inference. from their having made no report.

The assets in the hands of the assignees constituted a fund for the payment of all the debts of the principal debtors, Simmons & Jackson. W. R. Moore had personally no control over the assets. He had an equitable claim to be paid the amount applicable to his debt, in the order in which it stood, *pro rata* with other creditors of the same class, whenever the assignees were in funds. This claim he might have enforced by an equitable action against the assignees. This *right of action* was the *collateral security* in his hands, to the benefit of which the surety was entitled, and *might* have been made his own. This right of action has not been lost, but still remains, though, most probably, it will not be found so available for good as it might once have been. The creditor has done no act whereby the rights of the surety have been impaired; he has simply abstained from pursuing his remedy against the assignees. The creditor was not bound to do this unless upon the *request* of the surety.

In the case of *Lang* vs. *Brevard*, (3 Strob. Eq., 64,) the principle is well stated, as follows: "The prominent and well-defined distinction that pervades all the cases that may be deemed authoritative on the subject is that the surety will be discharged by any *acts*, on the part of the creditor, of a *positive* character, whereby the remedy against the principal debtor is lost, so that payment cannot be enforced against him. Such would be the case where, on the part of the creditor, there was a destruction, abandonment or waiver of counter securities. * * * For acts of mere *passive* sufferance, omission and delay, the surety will not be discharged." It is there added that the rule is the more reasonable, "inasmuch

as the surety thus aggrieved has the remedy in his own hands, and, by various alternative modes of procedure, may redress himself. He may convert the passive indulgence and delay of the creditor into a positive wrong, by demanding that he proceed to the collection of his debt. If the requisition be not complied with in a reasonably diligent manner, and the principal become insolvent, it will afford ground for relief."

In that case it was decided that the failure of the creditor to record a mortgage given as collateral security for the debt, whereby the debt was lost, the principal debtor being insolvent, did not release the surety. See also *Hampton* vs. *Levy*, (1 McC. Ch., 107,) where there is a similar decision. It appears to me that these cases are conclusive against the plaintiff's case—treating the right of the creditor in this case, under the assignment, as a collateral security.

The correctness of the rule as laid down in these cases is recognized in the late case of *Muller* vs. *Wadlington*, (5 S. C., 340,) where it is said: "If he (the creditor) commit any positive act prejudicial to the security he holds, or omits or neglects any act, *on the demand of the surety*, which the relation in which he stands imposes as a duty, the loss must fall upon him who has contributed to it, and not on the surety, who has been free from all participation." The rule as thus stated is abreast with the best and latest authorities elsewhere.—1 Story's Eq., §§ 325, 326, and cases cited in note.

In *Clark* vs. *Sickler*, (19 Sickles, 64 N. Y., 231,) the defendant signed the note as surety in fact for the co-maker, Mott, of which the payee had notice. After the note became due, Mott went to the house of Wright, the payee, for the purpose of paying the note, and offered the money to Wright's wife, who was his agent. She declined to receive it, for the reason that she or her husband had no use for the money and would rather have Mott keep it. Thereafter Mott became insolvent, and so continued until the hearing. After a thorough discussion, and the consideration of an immense array of cases, it was held that the surety was not discharged, the Chief Justice, Church, delivering the opinion of the Court, and the six associate Justices concurring. The Chief Justice says: "The current of authorities, which I think is quite harmonious, establishes that the *act* which will discharge the surety must be legally injurious or inconsistent with his legal rights." * * *
"The other principle referred to is, that the surety may be discharged from an *omission of duty*, but the surety *must* intervene and

*request the performance of the duty.*     *     *     *     Here the surety did nothing. He was not prevented from demanding prosecution by the creditor, nor from paying the note and prosecuting the principal himself."

For these reasons it is adjudged that the action be dismissed, and that the plaintiff pay the defendant his costs and disbursements, to be adjusted by the Clerk, and that he have execution therefor. Also ordered that the injunction be dissolved.

The plaintiff appealed on the following grounds:

1. Because of error in holding that the action of the meeting of the creditors of Simmons & Jackson, of which Moore was one, did not have the effect of changing the character of the assignees and converting them into. agents of the creditors.

2. Because of error in holding that Moore acquired no more control over the assignees than he would have had had that meeting not been held.

3. Because of error in holding that the claim of the creditor, Moore, to be paid by the assignees the amount applicable to his debt was only an "equitable" one.

4. Because of error in holding that, under the assignment, the only *collateral security* in the hands of Moore was his "right of action" against the assignees.

5. Because of error in holding that the creditor was not bound to pursue his remedy against the assignees unless upon the *request* of the surety.

6. Because of error in *not* holding that the assets in the hands of the assignees constituted a direct collateral security, which the creditor, after his acceptance, was bound to pursue with due diligence.

7. Because the decree is, in other respects, contrary to the law and the evidence.

*Hart & Hart,* for appellant.

*Allison, Williams,* contra.

September 21, 1878.   The opinion of the Court was delivered by

McIver, A. J.   The facts of this case are so fully and clearly stated in the decision below that it is wholly unnecessary to repeat

them here. Indeed, the Circuit Judge has so fully vindicated the correctness of the conclusion which he has reached that it is difficult to add anything to what he has so well said. That in order to discharge a surety the creditor must do some act of a *positive* character, either by entering into a valid contract with the principal debtor, varying the terms of the obligation, by extending the time for its performance or otherwise, or by doing some other act prejudicial to the interests of the surety, or he must omit, *after demand* from the surety, some duty imposed upon him whereby loss results to the surety, is a proposition too well settled to admit of dispute. The inquiry then, in this case is, has the creditor done any such act, or has he, after demand from the surety, omitted the performance of any such duty? The appellant contends that the creditor has done such act by accepting the provisions of the assignment. This involves two questions, one of fact and the other of law: 1. Did the creditor, as matter of fact, accept the terms of the assignment? This fact is alleged in the complaint and denied in the answer, and, as there is no distinct finding by the Circuit Judge upon this issue, it will be necessary to look to the testimony bearing upon it. It is true that the Circuit Judge, in one part of his decision, seems to imply that he treated the case as if the creditor had accepted, and argued that even if he did accept that this would not discharge the surety; but we do not regard this as establishing the fact put in issue by the pleadings. There is no positive evidence that the creditor did, in terms, accept the provisions of the assignment, and it is very clear that there was not only no necessity for the creditor to accept, but that the terms of the deed of assignment did not seem to contemplate anything of the kind on the part of the creditors, as there were no provisions for release, &c. Why, then, should the creditors accept? It is argued by the appellant that though the creditor did not, in terms, accept the provisions of the deed of assignment, yet that such acceptance may be presumed from his acting in conformity with the terms of the deed. Without undertaking to dispute or consider this proposition, we are at a loss to discover any sufficient evidence of the circumstances necessary to raise such a presumption. The only circumstance tending that way, so far as we can see, is the fact that the respondent's intestate attended the meeting of the creditors called to determine the question whether an agent, and, if so, who, should be appointed to act with the assignees, and he, with the other creditors present, simply declined to

exercise the privilege given them by the statute in such cases, for the statute does not require, but merely permits, the appointment of , such agent. This certainly was not sufficient to show that the creditor accepted the terms of the assignment, especially when taken in connection with the fact that the deed of assignment, so far as disclosed to us, did not provide either expressly or impliedly that the creditors should accept its terms, and with the additional important fact that the creditor proceeded with his suit, which he had previously commenced against the principal debtor, and obtained judgment in due course of law, which was clearly inconsistent with the idea that he had accepted the terms of the assignment, as one of the main purposes of the assignment, doubtless, was to prevent this very thing, by which costs would be multiplied against the debtor. Indeed, the meeting of creditors for the appointment of an agent to act with the assignees is ordinarily, if not universally, appointed some time before the period has elapsed within which the creditors are allowed to come in and accept the terms of the assignment; and it may well happen that a creditor who has attended such meeting may afterwards be unwilling to accept, for certainly the business capacity, energy and character of the persons who are to administer the assets are important elements for one to consider in determining whether he will accept his *pro rata* share of such assets in discharge of his debtor. So that even if the deed of assignment required a release, and therefore involved the necessity of an acceptance of its terms, it may well be doubted whether the mere fact that the creditor had attended such meeting and participated in its proceedings would amount to an acceptance of the terms of the assignment. If, therefore, the appellant has failed to establish the fact upon which his legal proposition rests, it is scarcely necessary for us to consider such proposition. But, even assuming the fact to be as contended for by the appellant, it is difficult to see how the act of accepting the assignment could in any respect injure the surety. As we have seen, there was no release required, and there was no extension of time given to the principal debtor, for, on the contrary, the creditor proceeded with his suit then pending against the principal debtor and obtained judgment in due course of law. Hence, even conceding that the conduct of the creditor amounted to an acceptance of the assignment, we do not see how such act could operate as a discharge of the surety.

The next inquiry is, has the creditor omitted any duty imposed upon him *after demand* from the surety that he should perform it? Assuming that it was the duty of the creditor to pursue the assignees and require of them the prompt execution of the trusts which they had assumed, there is not the slightest evidence that the surety ever made any demand upon the creditor so to do. Before the assignment was made the creditor might, *upon the demand* of the surety, have been required to pursue the principal debtor, and, failing so to do, the surety would have been discharged of loss which thereby fell upon the surety; but mere delay or omission to pursue the principal debtor, *without such demand,* would not discharge the surety.—*Pain* vs. *Packard*, 13 Johns. Ch., 174; *King* vs. *Baldwin*, 17 Johns. Ch., 384, with the notes thereto in 2 Amer. Lead. Cases, 255, followed in the recent case of *Colgrove* vs. *Tallman*, (67 N. Y., 95,) 23 Amer. Rep., 90, and recognized and approved in *Lang* vs. *Brevard*, 3 Strob. Eq., at page 64.

How, then, is this case altered by the transfer of the assets of the principal debtor into the hands of the assignees? If *mere delay* to pursue the principal debtor would not be sufficient to discharge the surety, we are unable to see why mere delay in pursuing the assignees could have such an effect. The remarks made by Moses, C. J., in the recent case of *Muller* vs. *Wadlington* (5 S. C., 347,) seems to us peculiarly applicable to the present inquiry. In that case Bauskett as principal and Wadlington as surety gave to Fair & Marshall seven money bonds, secured by a mortgage of real estate belonging to Bauskett. Muller became the assignee and holder of one of these bonds, the other six remaining in the possession of Fair, who had acquired Marshall's interest. After this assignment to Muller, by an endorsement upon the mortgage, Fair, without the knowledge or consent of Muller, released the lien of the mortgage. In an action upon the bond held by Muller against the surety, Wadlington, it was held that such release did not discharge the surety so far as the bond in the hands of Muller was concerned.

In delivering the opinion of the Court, the late Chief Justice uses this language: "To exonerate the appellant from his liability on the bond because of the alleged loss of the security through the mortgage, it should appear that it resulted from the fault of the creditor. There has been no attempt in any way to connect the respondent, who had the whole legal interest in the bond, with the

act of the assumed discharge by Fair. The appellant had as much control over the mortgage as the respondent. Fair stood in a fiduciary relation to both of them. The mortgage enured to their mutual benefit. And if on the one hand it is said by the surety to the creditor, 'you should have assumed control or dominion over the mortgage,' he might well reply, 'you knew of its existence, and, as I have done nothing to destroy its validity, why did you not require the mortgagee who held it to enforce it for your benefit?'"

These remarks may well be applied to the present case. If the surety here complains that the creditor should have taken steps to enforce the performance of their duty by the assignees, whereby the debt might have been paid, the creditor may, with equal propriety, reply:. "The deed of assignment was on record; you knew of its existence and of its terms, and, as I have done nothing to destroy its validity, why did you not require the assignees to carry out its provisions for your benefit?" There is no foundation for the distinction attempted to be drawn in the argument that a mortgage is a mere *security* for the debt, while an assignment is a transfer of property for the *payment* of the debt. The sole object of a mortgage is to put into the hands of a creditor the means, to the extent of the value of the property mortgaged, of enforcing the payment of his debt; and the purpose of an assignment is the same, except that, instead of the property being put into the hands of the creditor, it is put into the hands of third persons—as, in fact, the mortgage was in the case of *Muller* vs. *Wadlington.* Nothing but money can be regarded as payment unless it is accepted as such, and the assignment could not operate as payment unless it was so accepted, of which there is no pretense, as no release was required. If the assignment had been made *to the creditor*, that might possibly make a difference, for in that case active duties would be imposed upon the creditor. Nor are we able to perceive how the fact that the mortgage is given at the time the debt is contracted and the assignment made subsequently can affect the question we are considering. Both, in our view, are mere collateral securities for the payment of the debt, and we are at a loss to see how the time at which they are executed can affect the inquiry.

There is, however, another view of this case which is conclusive against the appellant. It is a well-established rule that "whenever a competent defense shall have existed at law the party who may have neglected to use it will never be permitted to supply the

omission and set it up by bill in chancery."—*Walker* vs. *Robbins*, 14 How., (U. S.) 584; see also to same effect *Creath* vs. *Sims*, 5 How., (U. S.) 204; *Sample* vs. *Barnes*, 14 How., (U. S.) 70. This rule has been fully recognized and enforced in this State in a case very similar to the one now under consideration.—*Maxwell* vs. *Conner*, 1 Hill Ch., 14.

Now, although the Court of Equity, as a separate tribunal, has been abolished, and its powers conferred upon the Court of Common Pleas, this change only affects the mode by which equitable relief is to be sought and the tribunal in which it is obtained. It does not alter the essential principles upon which such relief is obtainable; they remain the same as before. Hence, if the plaintiff's case was not maintainable in the Court of Equity under the rules governing that tribunal, it cannot now be maintained in the Court of Common Pleas.

Under the rule above stated, the plaintiff is not entitled to the relief which he now seeks if he has heretofore had an opportunity, which he neglected to use, of obtaining such relief in another proceeding on the law side of the Court of Common Pleas. That he has had and has neglected such opportunity is unquestionable. For, even if he could not have made the defense (the benefits of which he now seeks to avail himself of) in the original action because it was commenced before the deed of assignment was executed, (although, as judgment was not recovered until nearly a year afterwards, such defense, for aught that appears, might have been interposed,) yet no possible reason is or can be suggested why he could not have set up the discharge which he now contends for when called upon to answer the summons served upon him in September, 1875, but a very short time before the commencement of this action, to show cause why the execution should not be renewed. If it had been paid, or was otherwise discharged, that was the time to set up such payment or discharge; and to permit him now, by another action, to avail himself of the benefits of a defense which could have been as well set up in answer to the summons, would lead, as Daniel, J., says, in *Creath* vs. *Sims*, (*supra*,) "to the encouragement of useless and expensive litigation."

It is contended, however, that the judgment in question was invalid, because the defendant therein, who is the plaintiff here, had never been served with process, the acceptance of service being signed by "Clawson & Jackson, defendants' attorneys," which the plaintiff herein says he never authorized them to do. Admitting

this to be so, however questionable it may appear to us from the circumstances appearing in the case, it is very clear that it cannot avail the appellant in this proceeding. The proper mode of availing himself of this would be by a proceeding to set aside the judgment for want of service. This action does not even contemplate such a thing, and, on the contrary, the existence and validity of the judgment is distinctly recognized by appellant in the fifth paragraph of his complaint, as it seems to have been impliedly recognized by appellant in a conversation between him and respondent as late as 1866, and there is no allegation of want of service or other defect in the judgment, the sole ground relied upon being that the appellant, as surety, was discharged from his liability under the judgment by reason of the assignment. And when it is remembered that no such ground was set up, or, if set up, that it was overruled, in the answer to the summons issued to renew the execution, it is very clear that it cannot avail the appellant in this action even were the fact fully sustained by the evidence.

The judgment of the Circuit Court is affirmed.

*Willard*, C. J., and *Haskell*, A. J., concurred.