CHARLES GROTTE V. SAMUEL N. WEIL & COMPANY.

FILED JULY 10, 1901. No. 10,241.

Commissioner's opinion, Department No. 3.

1. **Retiring Partner is Liable for Debts of Firm, Unless Released by Creditors.** A retiring partner remains liable for all the existing debts of the firm to the same extent as if he had not retired. The agreement between him and the remaining partner, that the remaining partner will assume and pay all existing debts of the firm while valid as between themselves, can not change their relation to the creditors, unless the creditors become parties thereto.

2. **Diligence is Required on the Part of Creditor.** The creditor of the firm, after notice comes to him of the retirement of one partner and the assumption of the firm debts by the other member, should deal with reasonable diligence in the management of any securities in his hands for the payment of his claim, and exercise due caution in seeing that no advantage is taken of the retiring partner; but this is all that can be required.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J. *Affirmed.*

*O'Neill & Gilbert,* for plaintiff in error.

*E. G. McGilton, Montgomery & Hall* and *C. A. Goss,* *contra.*

DUFFIE, C.

Charles Grotte, the plaintiff in error, and Katy Grotte were partners engaged in the wholesale liquor business in the city of Omaha, and in July, 1895, the partnership became indebted to Weil & Co., of Cincinnati. On October 2, 1895, Charles Grotte sold his interest in the business to his copartner, Katy Grotte, she on her part agreeing to pay all outstanding liabilities of the firm and to hold him harmless from the same. October 3, 1895, what appears to be a circular letter was sent to Weil & Co. in which it was stated that Charles Grotte had retired from the firm and had no further interest therein, and that the new management had assumed and would pay all indebtedness. This letter was received by Weil & Co. in due course of mail. On October 4, Charles Grotte wrote a personal letter to Weil & Co. in which he stated that he had retired from the firm of Grotte & Co., and soliciting employment as traveling salesman for them. To this letter Weil & Co. replied on October 6, in which letter they called attention to the indebtedness of Grotte & Co., and said, "You are aware you are responsible to us for this debt." March 9, 1896, the indebtedness due Weil & Co. had been reduced to $296.80, and on that date Katy Grotte executed her note to Weil & Co. for the amount, Matthew A. Hall becoming surety thereon. This note was taken by the law firm of McCabe, Wood, Elmer & McGilton, to whom Weil & Co. had sent the account for collection. We wish to remark here that the plaintiff in error insists that Weil & Co. took this note in payment of the account, while defendants in error claim that the note was taken as collateral security and without prejudice to the right of Weil & Co. to sue the account any time. The note, when received by Weil & Co.,

was discounted at a bank in Cincinnati, and at its maturity the Cincinnati bank sent it to Omaha for collection, where it was protested for non-payment, returned to the Cincinnati bank and taken up by Weil & Co. The account of Grotte & Co. was credited with the amount of the note when received, and the account closed, but upon the note being protested and returned to Weil & Co., the account was charged with the amount of the note. On again coming into possession of the note Weil & Co. sent it to their attorneys in Omaha for collection, and when payment was demanded of Hall, the surety, he requested the attorneys to commence suit on the account, promising when judgment was obtained to purchase the judgment. At a later date, and as testified to by Hall and McGilton, who had the note in charge, Hall gave his personal check for the amount of the note, not as payment, nor to be sent to Weil & Co., but as an evidence of his good faith in agreeing to purchase any judgment that might be obtained against the members of the firm of Grotte & Co. on the account, it being understood that McGilton was to hold the check in his own possession until after the trial of the cause. Suit was brought on the account in the county court against the firm of Grotte & Co. and the individual members thereof, and judgment entered for the plaintiff in said action. Charles Grotte appealed to the district court, and the court, after the evidence was closed, directed the jury to return a verdict for the plaintiff, and from a judgment entered on this verdict the plaintiff in error has brought the case to this court. After the entry of judgment in the county court, Hall borrowed money from one Montgomery, with which he purchased the judgment from Weil & Co. and took an assignment thereof to Montgomery.

Several errors are assigned, but the material question for our consideration is whether the court erred in directing a verdict for the plaintiff. If the court was right in directing a verdict, the other errors assigned and argued are immaterial. The plaintiff in error is undoubtedly right in his contention that after a sale of his partnership

interest to Katy Grotte, one of the considerations of which
was that she should assume and pay the firm indebtedness,
she, as between themselves, became the principal debtor,
and he a surety.   Did Charles Grotte occupy the relation
of a surety to Weil & Co.?   At the time Grotte & Co. pur-
chased from Weil & Co. the goods on account of which this
indebtedness was contracted the firm of Grotte & Co.,
Charles Grotte and Katy Grotte, the individual members
of the firm, were each and all primarily liable for the debt,
and the question is, can two parties, each being primarily
responsible to a creditor for the payment of a debt, change
the relation of one of them by some agreement among
themselves and to which the creditor is not a party, in
such a way that one of those shall become a surety only
for the payment of the debt and change the relation exist-
ing between them and the creditors so as to require the
creditor to deal with that party as though he had been a
surety only at the inception of the account?   This is still
an open question in this state, and as the courts of the
country are divided, we are at liberty to adopt the rule
that we see fit, and one which we think is the better rule.
The following cases hold that partners, by an agreement
among themselves, may make one partner a surety for the
payment of the firm creditors and compel the creditors,
in the collection of their claim, to deal with him upon the
strict rules applicable to the rights of a surety:  *Stone v.
Chamberlin,* 20 Ga., 259;  *Hoopes v. McCan,* 19 La. Ann.,
201; *Barber v. Gillson,* 18 Nev., 89; *Bell v. Hall,* 5 N. J. Eq.,
477; *Millerd v. Thorn,* 56 N. Y., 402; *Colgrove v. Tallman,*
67 N. Y., 95; *Gates v. Hughes,* 44 Wis., 332.   The cases
holding a contrary doctrine are:  *Mason v. Tiffany,* 45 Ill.,
392; *Williams v. Boyd,* 75 Ind., 286; *Aiken v. Thompson,*
43 Ia., 506; *Rawson v. Taylor,* 30 Ohio St., 389; *Whittier
v. Gould,* 8 Watts [Pa.], 485; *Morton v. Richards,* 13 Gray
[Mass.], 15; *McCoy v. Jack,* 34 S. E. Rep. [W. Va.], 991.
The general rule relating to all contracts is that the par-
ties thereto can not change their relation to each other
except by a new contract to that effect based upon some

35

new consideration. This rule, in its application to cases like the one under consideration, is spoken of by Judge Story in the following language: "It frequently happens, that upon the retirement of one partner, the remaining partners undertake to pay the debts and secure the credits of the firm. This is a mere matter of private arrangement and agreement between the partners; and can in no respect be admitted to vary the rights of existing creditors of the firm." Story, Partnership, sec. 158. We do not wish to be understood as holding that the creditors of a firm, upon learning that one partner had retired, will not be held to the duty of acting in good faith in the management of security placed in his hands for the payment of his claim, or in the preservation of liens and in the application of payments made. Should the creditors fail, after notice to perform these duties, and such failure result in damage to the retired partner, it might well be regarded in a court of equity as cause to release him, at least to the extent of his damage. In such case the terms of the contract have not been changed; but the fact that new relations had arisen between the partners, by which one assumes as between them the burdens of all, might well call upon the creditors to act in such way as not to injure the retiring partner. We can not, however, go to the extent of holding that a contract upon which two persons agree with a third to be jointly and primarily liable for a debt can be changed by the agreement of the debtors themselves so as to require the creditor to accept one as a principal debtor and the other as a surety for its payment. With this as our view of the law, and with the remark that we can not discover in the record any bad faith on the part of Weil & Co. in the steps taken for the collection of their claims, it becomes unnecessary to examine other matters discussed in the brief of counsel for the plaintiff in error. We might say, however, that it appears to us that there was no consideration whatever existing for the note given by Mr. Hall. The evidence is undisputed that when the note was taken, McGilton, who

held the claim for collection, refused to make any agreement for the extension of time, and expressly reserved the right to sue the account whenever he saw fit. It was expressly agreed that this note should be held as collateral security, and a sale of the note by Weil & Co., if to discount it means that a sale was made, would simply be a conversion of the note upon the part of Weil & Co. The evidence is also undisputed that the check given by Hall was not to be used in the payment of this claim, but was to be held by McGilton in the nature of a security that Hall would perform his agreement and buy whatever judgment Weil & Co. might recover upon their account against Grotte & Co. and the partners of that firm.

We discover no error in the record, and recommend that the judgment of the district court be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.