No. 12,554.

FARICY *v.* J. S. BROWN MERCANTILE COMPANY.

(288 Pac. 639)

Decided May 12, 1930. Rehearing denied June 2, 1930.

428

Mr. L. E. LANGDON, Mr. V. G. SEAVY, for plaintiff in error.

Mr. HARRY S. PETERSEN, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

M. C. DAVIS and the plaintiff in error, Robert S. Faricy, were copartners. They became indebted to the J. S. Brown Mercantile Company, the defendant in error, for merchandise purchased by them from that company. The company obtained judgment against both Davis and Faricy. Faricy alone sued out a writ of error. The legal question involved in this action is presented by Faricy's third defense, to which the court sustained a demurrer. It is alleged that the partnership was dissolved; that upon the dissolution Davis retained the assets of the partnership and assumed all liability for the partnership debts; that immediately after such dissolution Faricy communicated the terms and conditions of the agreement between him and Davis to the officers, agents and attorneys of the company and told them to proceed at once to collect from Davis the indebtedness of the former copartnership; that Davis was then solvent and financially able to pay the indebtedness but that the company failed, neglected and refused to collect the indebtedness or to attempt to collect it from Davis; that

Davis has transferred, sold and assigned his property, or so much thereof as to render him insolvent; that Faricy was prevented from bringing an action to enforce the liability of Davis for the indebtedness of the former partnership, because the company demanded that, if he should do so, he must first secure to the company payment of the indebtedness owing by him to the company on account of transactions between him and the company separate and apart from the dealings between the company and the copartnership.

██ When a firm is dissolved and one of the partners takes the assets and assumes the liabilities, the relation of the parties, as between themselves, with respect to existing debts, is that of principal and surety, the continuing partner being the principal, and the withdrawing partner the surety. There is a conflict of opinion as to the effect of such an arrangement on the rights of firm creditors who have notice of such arrangement. In some jurisdictions it is held that such creditor is bound to treat the parties as principal and surety. This is the rule contended for by Faricy's counsel. In other jurisdictions it is held that such arrangement does not create the relationship of principal and surety as to creditors who have not assented to it, even though they have notice of it, and that mere silence on the part of the creditor who has received notice of such arrangement does not establish acceptance of the arrangement or assent thereto. 20 R. C. L. pages 987, 988.

The rule contended for by Faricy's counsel is said to have been announced in *Oakeley v. Pasheller,* 4 Clark & F. 207, 10 Bligh, N. S., 548, decided in 1836. See 9 L. R. A. (N. S.) 88, note. 'That case was cited in support of the decisions in *Colgrove v. Tallman,* 67 N. Y. 95 (1876), *Smith v. Shelden,* 35 Mich. 42 (1876) and other cases cited by counsel. In *A. F. Shapleigh Hardware Co. v. Wells & Chestnutt,* 90 Tex. 110, 37 S. W. 411, the court said: ''The leading cases in America which support the opposite view of this question are Colgrove v. Tallman

and Smith v. Shelden. * * * Both of these cases rest upon the authority of Oakeley v. Pasheller, 4 Clark & Finn., 207. * * * The doctrine announced in Smith v. Shelden originated in a misunderstanding of the case of Oakeley v. Pasheller, decided by the House of Lords, Lord Lyndhurst delivering the opinion. An examination of the case will show that the opinion proceeds upon the assumption that the creditor in that case accepted the agreement as it was made between the parties, receiving into the partnership his son-in-law as a new debtor and converting one of the partners from a principal debtor into that of surety for the new firm." In *Dean & Co. v. Collins & Mahood,* 15 N. D. 535, 108 N. W. 242, attention is called to the misunderstanding concerning the holding in *Oakeley v. Pasheller, supra,* and the rule announced in Colgrove v. Tallman is characterized as unsound. See also *Barnes v. Boyers,* 34 W. Va. 303, 12 S. E. 708. Some authorities say that the weight of authority supports one rule; other authorities insist that the weight of authority supports the other rule. It is interesting to note the conclusion arrived at by the National Conference of Commissioners on Uniform State Laws, as embodied in the Uniform Partnership Act. Of that act a district court of the United States said, in In re *Safady Bros. & Sartell,* 228 Fed. 538, 540: "It is an attempt to codify the existing common law on the subject, rather than to change that system; but where the rules are conflicting it chooses the one supposed to be the better." All who have any acquaintance with the labors of the commissioners realize the painstaking care exercised in considering, drafting and revising the propsed bills for uniform state laws. The Uniform Partnership Act states the law in these words: "Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment

of such obligations.'' That act has been adopted in seventeen states, including New York and Michigan, where *Colgrove v. Tallman, supra,* and *Smith v. Shelden, supra,* were decided. There is reason for the rule. Where a creditor, for example, without the consent of the retired partner, extends the time of payment—such was the situation in *Smith v. Shelden, supra*—he thereby deprives the retired partner of the right to pay the debt at once and sue his former partner while the latter is solvent. In such circumstances it is reasonable to hold that the retired partner has been released by the act of the creditor. Other situations may arise where it would be just to hold that the creditor has released the retired partner. Thus, where a creditor has notice that one partner has retired and that the other partner has taken the firm assets and assumed the firm liabilities, it is reasonable to charge the creditor with the duty of acting in good faith in the management of securities placed in his hands for the payment of his claim, and in the preservation of liens, and in the application of payments made; and if the creditor should fail to perform these or similar duties, and if such failure should result in damage to the retired partner, it would be fair and just to hold that such failure would release the retired partner to the extent of the damage caused thereby. *Grotte v. Weil,* 62 Neb. 478, 87 N. W. 173, 9 L. R. A. (N. S.) 78, note. And see dictum in *Rawson v. Taylor,* 30 Ohio St. 389, 402. It would not be just, however, to impose upon the creditor the duty of suing the continuing partner upon demand of the retired partner. Faricy's plea assuming the existence of such a duty is bad. The concluding part of the third defense, taken either by itself or in connection with the preceding part, does not state facts barring the action. What power the company had to prevent Faricy from suing Davis without first securing to the company the payment of an indebtedness arising out of other transactions, is one of the mysteries unsolved by the answer. For aught that appears in the

answer, the demand alleged to have been made by the company was absurd, and could not have interfered with Faricy's contemplated suit. As between Faricy and Davis, the former, as we have seen, was a surety. He had the legal right, without the company's consent, to pay the debt and thereupon sue Davis. Or, without paying the debt and without the company's consent, Faricy had the right to bring suit to compel Davis to satisfy the debt due the company. Code of Civil Procedure, §21.

In our opinion, the facts pleaded in the answer constitute no defense to the action. The demurrer thereto was properly sustained.

The judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.