877 F.2d 843
 64 A.F.T.R.2d 89-5216, 89-2 USTC P 9570
 UNITED STATES of America, Plaintiff-Appellee,
v.
John R. HAYS, individually, and as former partner of J &
Sons, Defendant,
and
James F. Manley, individually, and as former partner of J &
Sons and dba J & Sons Construction Co., Defendant-Appellant.
 No. 87-1931.
 United States Court of Appeals,
Tenth Circuit.
 June 14, 1989.
 
 Thomas F. Quinn, and Frederic L. Coldwell with him on the briefs, Quinn & Associates, Denver, Colo., for defendant-appellant.
 William S. Rose, Asst. Atty. Gen. (Gary R. Allen, William S. Estabrook, and Howard M. Soloman with him on the brief), Washington, D.C., for plaintiff-appellee.
 Before McKAY, SEYMOUR, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 This case concerns the effect of a state partnership statute on a retired partner's liability for federal employment taxes owed by a dissolved partnership. The precise issue is whether, under the Uniform Partnership Act as adopted by Colorado, one partner's agreement with the Internal Revenue Service ("IRS") to pay the dissolved partnership's past-due employment taxes serves to discharge the other partner from liability for those taxes. The district court held that the second partner remains liable, and we affirm.[1]
 
 
 2
 The facts are not in dispute. John R. Hays and appellant James F. Manley formed a Colorado general partnership to engage in the construction business. The partnership failed to pay various employment-related taxes owed to the IRS. The partnership later dissolved, and its business and assets were turned over to a sole proprietorship owned by Hays. As part of the dissolution, Hays agreed to assume all of the partnership's liabilities.
 
 
 3
 The IRS received notice of Hays' agreement to assume the liabilities and entered into negotiations with him concerning the partnership's back taxes. The IRS and Hays eventually reached an agreement whereby Hays would pay the taxes in installments from the receipts of his sole proprietorship. However, the IRS never purported to release its claims against Manley by that agreement. In fact, the IRS during this period continued to send delinquent tax notices to both Manley and Hays. (Tr. at 15-17, 34-37, 46-47; Manley Br. at 6.)Pursuant to the agreement with the IRS, Hays made a few payments to the IRS but quickly fell behind. The government then sued Manley, Hays, and the dissolved partnership for the back taxes. This appeal concerns only the claims against Manley.
 
 
 4
 In the district court, Manley argued that Section 36(3) of the Uniform Partnership Act, as adopted by Colorado, discharged his liability for the partnership's tax obligations.[2] Manley asserted that the IRS's payment agreement with Hays constituted a "material alteration in the nature or time of payment" of the partnership's obligations which were assumed by Hays. Manley contended that the agreement consequently acted to discharge Manley's liability, much like a surety's liability is discharged when the creditor and principal materially change the underlying obligation. After a bench trial, the district court rejected Manley's contention, holding that the IRS merely was "forbearing from ... collection" on its tax liens when it entered into the agreement with Hays: "[T]he forbearance from collection on those items is not an alteration of the time for payment.... [H]ow has anything been changed here? There simply was an agreement to pay out of the [sole proprietorship's] draws. The obligations remain the same as they are in the federal law." (Tr. at 52-54.)
 
 
 5
 On appeal, Manley asserts that the district court's interpretation of Section 36(3) was erroneous and that the IRS's payment agreement operated to discharge him. The government argues that the district court was correct in holding that Section 36(3) does not discharge Manley's tax liability.[3]
 
 
 6
 Manley has not cited any cases holding that a forbearance agreement between a creditor and a former partner who has assumed the partnership's obligations constitutes a "material alteration" under Section 36(3). Our research has not revealed any either.
 
 
 7
 However, based upon our own reading of the language of Section 36(3), we agree with the district court that the IRS's attempt to work out a payment schedule with Hays was a simple act of forbearance that did not constitute a material alteration in the nature or timing of the already-due obligation. The underlying obligation arose as a result of the partnership's failure to pay certain employment taxes. That obligation was due and owing by both Manley and Hays, jointly and severally, months before Hays agreed to make payments to the IRS on it. See Colo.Rev.Stat. Sec. 7-60-115 ("All partners are liable ... jointly and severally for all ... debts and obligations of the partnership....").
 
 
 8
 The IRS's agreement with Hays did not purport to change the terms of Manley's past-due obligation or to release Manley in any way. Manley's obligation to the IRS remained the same at all times. The IRS merely agreed to refrain from invoking its formidable collection rights so long as Hays made certain payments. At any time during that period, Manley could have paid the IRS obligation without regard to the agreement between Hays and the IRS, and thereby have freed himself from further individual liability.[4]
 
 
 9
 Even if we were to look beyond Section 36(3)'s language to general principles of surety law, we would reach the same result. Manley argues that under a Colorado Supreme Court case decided before Colorado's adoption of Section 36(3), Hays and Manley stand in the position of "principal and surety, the continuing partner being the principal, and the withdrawing partner being the surety." Faricy v. J.S. Brown Mercantile Co., 87 Colo. 427, 288 P. 639 (1930). Quoting Faricy, Manley contends that "[w]here a creditor, without the consent of the retired partner, extends the time of payment, he thereby deprives the retired partner (the surety) of his right to pay the debt at once and sue his former partner (the principal) while the latter is solvent." (Manley Br. at 11.)[5]
 
 
 10
 However, Manley's description of common law surety principles based on Faricy leaves out one significant point. Under traditional surety principles, a creditor's agreement to extend the payment time of the principal's obligation does not discharge the surety when the creditor reserves the creditor's rights against the surety. See generally Restatement of Security Sec. 129 (1941) ("[W]here the principal and creditor, without the surety's consent, make a binding agreement to extend the time of payment by the principal, the surety is discharged unless the creditor in the extension agreement reserves his rights against the surety.") (emphasis added); L. Simpson, Handbook on the Law of Suretyship Sec. 73 at 351, 362 (1950) (surety is not "discharged ... when the creditor reserves his remedies against the surety").[6]
 
 
 11
 Here, the evidence at trial showed that in reaching an agreement with Hays, the IRS reserved its rights against Manley. Thus, even under traditional surety principles, Manley's liability on the obligation was not discharged.[7]
 
 
 12
 Because there was no material change in the underlying debt that Manley and Hays owed to the IRS, Section 36(3) of the Uniform Partnership Act does not discharge Manley's liability.
 
 
 13
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the cause is ordered submitted without oral argument
 
 
 [2]
 Colo.Rev.Stat. Sec. 7-60-136(3), which adopts Section 36(3) of the Uniform Partnership Act, provides:
 Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of his obligations.
 
 
 [3]
 Alternatively, the government contends that federal law rather than state law applies to the issue of a general partner's liability for the tax obligations of a dissolved partnership. Because we rule against Manley on the state law issue, which is the only issue that he has raised, we need not address the government's alternative argument for affirmance based upon federal law. We do note, however, that in the analogous context of limited partnerships, the IRS has looked to state law to determine the liability of partners for partnership tax liability. Revenue Ruling 54-210, 1954-1 CB 209; Revenue Ruling 54-213, 1954-1 CB 285. Further, other courts have assumed that the liability of a general partner for the tax obligations of the partnership is determined by state law rather than federal law. See, e.g., Calvey v. United States, 448 F.2d 177, 180 (6th Cir.1971) ("[T]he federal revenue code makes no specific reference to the liability of partners as individuals [for partnership tax obligations].... The governing law pertaining to the instant case is represented by two sections of the Uniform Partnership Act adopted by Michigan in 1922...."); In re McManis, 70 B.R. 171, 173 (Bankr.E.D.Ky.1986)
 
 
 [4]
 Cf. Chevron Chemical Co. v. Mecham, 536 F.Supp. 1036, 1045 (D. Utah 1982) ("The 'extensions' were not extensions of the due date on the obligation. Chevron merely extended the period in which Great Basin could cure the existing default before Chevron would actively pursue its more drastic creditor's remedies. They might more aptly be described as 'forbearances.' However they are named, they did not effect a discharge of [the guarantor's] independent liability based upon his guaranty."). But cf. United States v. Ross, 176 F.Supp. 932, 935-36 (D.Neb.1959) (retired partner was discharged from further tax liability when IRS compromised and released tax claim against person who had assumed partnership's liabilities)
 
 
 [5]
 The portion of Faricy on which Manley relies is actually one of two hypotheticals discussed by the court. The first hypothetical, which is the one on which Manley relies, concerns what happens when a retired partner satisfies the partnership's debt but is unable to sue the continuing partner immediately for reimbursement because of the creditor's extension agreement. As shown below, that hypothetical does not apply here because Hays' agreement with the IRS did not prevent Manley from suing Hays immediately for reimbursement. The second hypothetical in Faricy concerns situations in which a creditor may have a duty to manage collateral and security interests in a way that does not prejudice the retired partner. The court in Faricy stated that the creditor's failure to act properly in those circumstances "would release the retired partner to the extent of the damage caused thereby." Id. (emphasis added). That hypothetical also does not apply here because Manley presented no evidence at trial that the partnership had any valuable assets subject to the IRS's liens (see Tr. at 55), let alone that Manley was injured in any way by the IRS's handling of those assets. The court in Faricy ultimately held that the liability of the retired partner in that case was not discharged because the retired partner was free to pay off the partnership's obligation (or to force his former partner to do so) at any time:
 It would not be just ... to impose on the creditor the duty of suing the continuing partner upon demand of the retired partner.... [Faricy] had the legal right, without the [creditor] company's consent, to pay the debt and thereupon sue [the continuing partner] Davis. Or, without paying the debt and without the company's consent, Faricy had the right to bring suit to compel Davis to satisfy the debt due the company.
 
 
 [288]
 P. at 640
 
 
 [6]
 The justification for this principle is as follows. If a creditor extends the principal's payment time without reserving rights against the surety, then the surety no longer can sue the principal immediately upon paying the full debt. The reason is that the only way that the surety can recover from the principal is through the equitable doctrine of subrogation, and a subrogated surety stands in the shoes of the creditor and has no greater rights than those of the creditor. Thus, if the surety satisfies the debt and tries to sue the principal, the principal can defend on the ground that the debt is not yet owing because the creditor extended it. In contrast, if the creditor extends the principal's payment time while reserving rights against the surety, then the principal is on notice that the surety is still liable and that the surety may sue the principal immediately for reimbursement if the surety satisfies the debt. In other words, if the creditor reserves rights against the surety, then the principal knows that the extension agreement with the creditor is subject to the possibility that the surety will satisfy the debt and sue for immediate reimbursement. As a result, a creditor's payment-extension agreement that reserves the creditor's rights against the surety cannot be used by the principal to defend against the surety's subrogation suit. Accordingly, a payment-extension agreement in those circumstances does not discharge the surety. See generally Restatement of Security Sec. 129 Comment d and Sec. 122 Comment d; L. Simpson, Handbook on the Law of Suretyship Sec. 73 at 362-63 (1950); 10 Williston, Contracts Sec. 1230 at 738-39 (1967)
 Colorado courts have applied this principle. See McAllister v. People ex rel. Brisbane, 28 Colo. 156, 63 P. 308 (1900) ("The remedy against the surety was expressly reserved by the obligee by taking judgment against him, and the surety, therefore, was not discharged"); Fisher v. Denver Nat. Bank, 22 Colo. 373, 45 P. 440, 443 (1896) ("[I]t is elementary that if ... time is given by the payee to the principal debtor for the payment of the note, without ... reserving the right to proceed against [the surety] at any time, the surety or accommodation maker is discharged"). In Moss v. McDonald, 772 P.2d 626 (Colo.App.1988), the Colorado Court of Appeals held that the sureties in that case were discharged because they did not consent to the creditors' extension agreement. It is unclear whether the creditors in Moss reserved their rights against the sureties. If Moss were construed to hold that an extension agreement discharges non-consenting sureties despite the reservation of rights against them, then the case seemingly would not be in accord with the Colorado Supreme Court authorities cited above.
 
 
 [7]
 Hays testified at trial that he knew the IRS had not released Manley:
 Q. So then you knew that the service was still trying to collect the liability from Mr. Manley?
 A. I knew that.
 (Tr. at 37.) Likewise, the IRS official responsible for negotiating the agreement with Hays testified that the IRS did not intend for the agreement to release Manley:
 Q. And it was not your intent in entering into that agreement to relieve Mr. Manley of any obligation that he may have for partnership debt, is that correct?
 A. Correct.
 (Tr. at 49.) The IRS's intent not to release Manley is confirmed by that fact that the IRS continued to send delinquent tax notices to Manley long after entering into the agreement with Hays. (Tr. at 15-17, 34-37, 46-47.) Because we conclude that the IRS reserved its rights against Manley, we need not address the issue of whether the agreement was supported by adequate consideration. See L. Simpson, Handbook on the Law of Suretyship Sec. 73 at 362 (1950) (creditor's promise to extend payment time must be supported by consideration before surety can be discharged).