**Lewis Porter, impleaded with another, v. Peter J. G. Hodenpuyl.**

A surety who, after time given by the creditor to the principal, promises to pay the debt with full knowledge of the facts, is liable without any new consideration for the promise.

The action in such case is upon the original obligation, and not upon the new promise.

*Heard June 1st. Decided November 14th.*

Assumpsit on a promissory note, of which the following is a copy:

"$549. Sixty days after date for value received, we or either of us jointly promise to pay, to the order of J. S. Nevius, five hundred and forty-nine dollars, payable at the banking office of Wm. J. Wells, Grand Rapids.

GRAND RAPIDS, May 28, 1857.

*H. S. Watrous,*

*Lewis Porter, Surety.*"

The note was endorsed by Nevius to the plaintiff in May or June, 1858.

Porter alone defended. He proved that Watrous made an assignment for the benefit of his creditors, October 9, 1857, and he also proved by Charles C. Miller, that in a conversation between Nevius and Porter, in the fall of 1857, after the assignment, Nevius requested Porter to pay the note; that Porter told Nevius he supposed the note had been paid, and asked Nevius why he had not

informed him of its non-payment; that Nevius replied that Watrous had requested him not to inform Porter thereof, and not to trouble him, and that at Watrous' request he had extended the time for the payment of the note two or three times, and had been paid for such extensions interest at the rate of three per cent. per month; that Porter told Nevius if he, Nevius, had informed him when the note became due that Watrous had not paid it, he, Porter, would then have paid it, and that at that time he would have secured himself against Watrous. This witness heard another conversation between the same parties in the spring of 1857, in which Nevius asked Porter if he had made up his mind as to paying the note, and what he would do about it, and Porter replied he was not holden on the note; that the extensions given to Watrous, had destroyed his, Porter's, liability thereon. The testimony of this witness was corroborated by James Pierce, who heard the same conversations.

To rebut this evidence, the plaintiff called Nevius, who testified that he had a conversation with Porter a short time after the Watrous assignment, in the presence of Mr. Eggleston and Mr. Foster. Eggleston or Foster, referring to the assignment, asked if witness was one of the fortunate or unfortunate ones. Porter said witness was one of the fortunate ones. "I do not recollect the words he used. He said he was on the note, or had endorsed it, I do not recollect which, and that it would be paid." "He said I might come and get some clothing on it if I wished. I do not know whether Porter then knew of the extensions, or any portion of them, which had been granted."

Plaintiff then offered to show that Nevius informed Porter all about the extensions, and that Porter afterwards promised to pay the note. To this, defendant objected; 1st: that the new promise could not be shown under the pleadings: 2d: that it was a promise to pay the debt of

a third person, and must be in writing; 3d: that the action is on a joint promise of Watrous and Porter, and the promise sought to be proved is the individual promise of Porter alone; 4th: that the promise is one made to Nevius alone, and is not negotiable; 5th: that it was a promise without consideration, and void. These objections were overruled, and Nevius testified that he informed Porter of the extensions in October or November, 1857; that after the interview when Eggleston and Foster were present, he called at Porter's store to see about the payment; that Porter did not want to pay then, but would pay it if witness would put it off six or eight months, and offered to turn out collaterals.

The witness further testified that Porter found fault with him for not letting him know the note had not been paid, and said the note would have been paid if witness had notified him. Witness then told him of the extensions; how Watrous came to his house and said he could not pay the note when it was due, and witness asked for a new note, which Watrous said he could not give; that he did not want to go to Porter, and said the note would be paid in thirty days. Witness further told Porter that the interest had been paid up to the twenty-fifth or twenty-sixth of September, on these extensions, and that the note was extended thirty days each time. He did not then tell Porter how much was paid for the extensions. At the next interview, a week or ten days afterwards, witness called upon Porter to see at what time he would pay the note, and offered to wait sixty or ninety days; Porter would not accept the offer, but said he would pay in some six or eight months. Witness said he could not wait so long. At this conversation Porter asked witness what rate of interest he had been receiving, and witness told him he had been receiving three per cent. a month for the extensions. A few days afterwards he called upon Porter again, to see if he would not shorten the time, and

Porter told him he might sue the note. Before witness left, he asked Porter when he would pay the note: Porter said he would pay it some time in June. In June, witness had a conversation with Porter, who then said he had found he was not liable on the note. Porter's promise to pay was made after witness had correctly informed him about the extensions.

The Circuit Judge charged the jury, that a valid agreement made by and between the creditor and the principal debtor to extend the time of payment of the debt, without the knowledge or assent of the surety, is not a discharge of the surety by the act of the creditor, but by operation of law: that a subsequent promise by the surety, he at the time of making the same having a full knowledge of the facts and circumstances of the extensions and of the consideration thereof, would be a waiver of such discharge: that such promise being proved to have been made after the extensions, and after full information as to all the facts, would leave the surety liable upon the original obligation; that the action in such case need not be upon the subsequent promise, but upon the original obligation, which, being negotiable, could be prosecuted by a third person legally holding the paper as well against the principal as against the surety; the surety being the only person who could, in the first instance, claim advantage from the extensions, and he would, by such promise, waive that advantage.

The jury returned a verdict for plaintiff.

*E. S. Eggleston*, for plaintiff in error:

The new promise could not be shown under the pleadings:— 3 *Wend.* 131; 1 *Hill*, 535.

The promise was void for want of consideration. The rule of law is that, when a party is released or discharged by the act of the creditor, there remains no consideration for the new promise. But when the remedy is suspended

by some positive rule of law, or by the interposition of some statutory prohibition, a consideration remains which will support a new promise. — 6 *Barb.* 549; 24 *Me.* 561; 22 *Me.* 475; 7 *Conn.* 57; 13 *Johns.* 257; 3 *Pick.* 207; 1 *Met.* 520; 1 *Hill*, 533; 9 *Watts*, 396. Here it must be assumed that Nevius knew the legal effect of his act, and the discharge is as much his act as if it had entered into their conversation. Porter being thus discharged, his obligation could only be re-created by a new promise for a new consideration, and in writing. Counsel also cited and commented on *Story on Notes*, § 486; *Ibid.* § 275; *Burge Suretyship*, 209; 6 *Met.* 553; 1 *Turn. and Russ.* 395; 13 *East*, 417; 23 *Wend.* 379; 3 *Mich.* 188.

*G. V. N. Lothrop*, for defendant in error:

The new promise was a waiver of the discharge. — 12 *East*, 38; 12 *Wheat.* 183; 12 *Pet.* 497; 12 *Mass.* 52; 8 *Pick.* 1; 23 *Wend.* 379; 9 *Ala.* 622; 13 *N. H.* 240.

The action was correctly brought on the note. — 13 *N. H.* 240; 23 *Wend.* 411, *per Bronson J.*

CAMPBELL J.:

The only question in this case is, whether, after time given by a contract with the principal, a surety who promises to pay with full knowledge of the facts, is liable without a new consideration for his promise.

It is claimed that having been absolutely discharged by the extension of time, the surety's promise is at an end; and several cases are cited to show that, where an end has been put absolutely to an obligation, no new one can be created without a new consideration.

It is unnecessary to refer at length to these authorities, or to examine into their qualifications; for the rules applying to sureties have been so long and so uniformly settled on their own basis, that any attempt to unsettle them would be unauthorized, and would only lead to confusion.

PORTER *v.* HODENPUYL.

The doctrine that a surety is discharged by the extension of time to his principal, or by any other modification of the contract assured, is not a common law doctrine in its origin, and arose from the practice of Courts of Equity in relieving sureties against liability under such circumstances. There are some cases, even yet, where a court of law can not give complete relief for such causes. The general doctrine, however, has for a long time been allowed to prevail in common law courts; and such a defense may always ˙be entertained where the suretyship appears on the instrument sued upon,ᵌ and in many cases where it does not appear.

But it has always been confined to cases where there has been neither prior nor subsequent assent given by the surety. And in every case where, with knowledge of the facts, a surety recognizes his liability, and promises to pay the debt, such promise is applied to the original debt, and requires no new consideration. This has been expressly decided repeatedly, and is recognized without exception by all the respectable text writers. — *Mayhew v. Crickets*, 2 *Swanst.* 185; *Smith v. Winter*, 4 *M. & W.* 454; *Stevens v. Lynch*, 12 *East*, 38; *Bank v. Johnson*, 9 *Ala.* 622; *Fowler v. Brooks*, 18 *N. H.* 240; *Sigourney v. Wetherell*, 6 *Met.* 553; *Tebbetts v. Dowd*, 23 *Wend.* 379; *Smith Merc. L.* 554; *Edwards on Bills*, 171; 1 *Pars. on Cont.* 512, note (x); *Chitty on Bills*, 448; 2 *Lead. Ca. in Eq. Part* 2, 363, 383; *Burge on Suretyship*, 209.

The charge of the court was correct, and the judgment should be affirmed.

MANNING and CHRISTIANCY, JJ., concurred.

MARTIN Ch. J., *dissenting:*

No one can read the testimony in this case and' believe that Porter made any promise with a knowledge of the fact that, by the extension, his liability had been discharged.

Until the conversation in June, when he peremptorily refused to pay, he acted upon the supposition of a continuing liability; but having then ascertained the fact that he was discharged from his liability by the extensions given by Watrous, he refused to be bound.

The question now is, whether he is liable upon his original promise as surety under this state of facts. This promise was that Watrous should pay the note which they had jointly executed, in sixty days from its date. Before the note fell due — for so Nevius' testimony must be read — Nevius and Watrous altered its terms, for a valuable consideration, and withheld the knowledge of that fact from Porter; and this was repeated until Watrous became insolvent. I know of no principle of law, of equity, or of sound morals, which will hold Porter liable under the circumstances of this case. He had been kept ignorant, and purposely so, of the operations of Nevius and Watrous, until, by the insolvency of the latter, the probability of collecting the debt of him was extinguished, and, for aught that appears, all opportunity to Porter for securing himself lost. At the common law, I think under such circumstances he would be discharged; for after such extensions for valuable consideration, the original promise of the principal had been changed for another, for which Porter was not surety. But if it be otherwise, and the defense is of equitable origin, and engrafted upon the law upon equitable considerations, the liability of the surety should be determined from the equities of the particular case, and he who seeks equity should have acted equitably.

If, before the expiration of the sixty days, Nevius, for a valuable consideration, extended the time of payment, he virtually received a new promise from Watrous in lieu of the former, and for which Porter was not surety under any rule of law, nor upon any equitable principle. From that time forward, Nevius relied upon the personal liability of Watrous. If, on the other hand, the extension was

given after the sixty days had expired, Porter was equally discharged; for Nevius had made a new contract with the principal, for a valuable consideration, for which Porter was not surety; and Porter may insist, as the law will hold, that the new promise satisfied the former, and *of course*, the collateral obligation of Porter as surety. When time is given to the principal debtor, by a valid agreement which ties up the hands of the creditor, though it be but for a single day, the surety is discharged. The creditor must be in such a situation that, when the surety comes to be substituted in his place by paying the debt, he may have an immediate right of action against the principal. — See *Bangs v. Strong,* 7 *Hill,* 250; *same case,* 10 *Paige,* 11; *Bower v. Tiermann,* 3 *Denio,* 378.

I am aware that it is said that assent to the extension revives or continues the liability of the surety, and that if the assent be given with knowledge of the facts, or if the surety upon such knowledge recognizes his liability, and promises to pay the debt, such promise is applied to the original debt, and will sustain a recovery in an action founded upon the original promise. And this is true when properly understood. The knowledge which the surety must have is not of facts alone, but of facts and their consequences. Thus Mr. Burge says (*Burge on Suretyship,* 209), a surety can not claim relief in respect to an arrangement made between the creditor and the principal to which the surety has himself assented, or which, although made without his previous knowledge, has been afterwards approved and confirmed by him; but if the approbation were given by the surety in ignorance of the *fact that he had been discharged* in consequence of time having been given to the principal, the surety will continue discharged. See also *Fowler v. Brooks,* 13 *N. H.* 240; *West v. Ashdown,* 1 *Bing.* 164. Especially is this so when the time is given upon a valuable consideration paid by the principal; for the payment and receipt of such consideration creates

a new contract. In such case the superior equities are with the surety; and there can be no sound freason given why he should be held liable upon his original promise, except after a promise made upon the fullest knowledge of his rights, and of the consequences of the acts of his creditor. His equitable rights require that the creditor should protect him from loss; and such creditor has no right to jeopard them by giving time to the principal, and still insist upon the surety's liability, unless that liability be acknowledged after full knowledge of the fact that he is discharged. Even in such case, I confess, I can discern no principle of law under which he could be held liable upon the original undertaking, discharged as it is by a new contract; although he might be upon his new promise, having the original undertaking for a consideration.

But there is a class of cases to which this equitable principle more intimately applies, and in which the discharge, not being the sole act of creditor and principal, or not founded upon any valuable consideration, is not absolute, and therefore should be no bar to a recovery in an action upon the original promise. Such is the case where a new obligation is taken from the principal with the assent and concurrence of the surety:— see *Skip v. Henry*, 3 *Atk.* 91,— in which case, upon no equitable principle, should the latter be discharged.— See 1 *Story Eq. Juris.* §§ 325, 326; *Sneed v. White*, 3 *J.J. Marsh.* 526; *Rees v. Berrington*, 2 *Ves.* 540 *and notes; Bank of Decatur v. Johnson*, 9 *Ala.* 662. So when the creditor has released the surety by *laches*, and a subsequent promise is made with knowledge of such laches and their consequences, as in *Mayhew v. Crickets*, 2 *Swanst.* 185; *Sigourney v. Wetherell*, 6 *Metc.* 553, *and Tebbetts v. Dowd*, 23 *Wend.* 379; and this I think upon the principle that no new agreement, in satisfaction of the original one, had been made, but a default only had occurred, which was mere matter of defense which might be waived. So in case of an extension given

with the surety's assent before the debt which he secures falls due; as in *Smith v. Winter*, 4 *M. & W.* 454; for the reason, among others, that the promise to extend was made to the surety, as well as to the principal; and prior assent prevents a discharge, or at least prohibits the defense, as the surety by his assent debars himself from relying upon such extension as a bar to the action. Again, where the extension is given without consideration; as in *Stearns v. Lynch*, 12 *East*, 38; and the surety recognizes it, he is debarred this defense, because there was no period of time when he could not, if he had paid the debt, have had an immediate right of action against the principal, and therefore his rights were never jeoparded; but even in such case, if there be no subsequent recognition or promise, the surety is released, because the contract has been altered in its terms by the principal parties so that no equitable rights of the creditor longer exist against the surety, even though his strict legal rights may not be destroyed. — See *Fowler v. Brooks*, 13 *N. H.* 240. In these classes of cases the liability of the surety does not appear to be absolutely put at an end; but where the original contract is superseded by another, it should seem that the surety's obligation is absolutely discharged — put at an end. — See 1 *Story Eq. Juris.* § 326; *Sneed v. White*, 3 *J.J. Marsh.* 526. In the one class of cases it would seem that the remedy may be lost, in the other the liability is discharged. The distinction between a release by laches, and a discharge of liability by the act of the creditor, is a substantial one; for in the former case the creditor has deprived the surety of no right, nor placed him in actual jeopardy; while in the latter he has deprived himself of the power of conferring upon the surety, in case he pays the debt, the power of immediate protection, as he can not confer upon him the power of immediate remedy. In this respect, I think the charge of the Circuit Judge was too broad, and misled the jury;

PORTER v. HODENPUYL.

for taking all the testimony as true, there can be no doubt that Porter was ignorant of the important fact that he was discharged, until the interview in June, when he, acting for the first time upon such knowledge, denied all liability. I know of no equitable rule which will compel him under such circumstances to pay the debt of Watrous. A promise under a mistake of rights can not be enforced if repudiated.—13 N. H. 240. Especially as it was a qualified one, to pay at a future day, and was not co-extensive with the liability, if any, existing upon the note, might he repudiate it; for it was not a full recognition of liability.

*Judgment affirmed.*