Williams *et al. v.* Boyd.

———◆◦◦———

No. 8134.

WILLIAMS ET AL. *v.* BOYD.

PROMISSORY NOTE.—*Pleading.*—*Cross Complaint.*—*Sureties.*—*Partners Retiring.*—*Partners Remaining.*—*Several Demurrers.*—In an action upon a promissory note of a partnership, composed of six persons, against the members thereof and their successors and representatives, but asking judgment against the members alone, a cross complaint of two defendants, alleging that when they withdrew their co-partners assumed and agreed to pay the debts of the firm, including the note sued on, is sufficient to show that the partners remaining became primarily liable, and that, as between them and the retiring partners, the latter must be regarded as the sureties of the former; but the remaining partners, by sale, by death, by assignment and otherwise, being represented in the action by successors, administrators, trustees and receivers, the cause of action on the note was not against the latter, and their several demurrers to the cross complaint of the retiring partners against them were correctly sustained.

SAME.—*Release of Surety.*—*Extending Time for Payment.*—*Usurious Interest.*—*Verbal Agreement.*—*Evidence.*—Where, on trial of such action, the note in evidence showed an agreement to pay ten per cent. interest, not in advance, evidence, that when two partners retired·the continuing partners agreed to pay the note, that the payee had notice of that arrangement, that interest was paid for a time at twelve per cent., that by an agreement, not in writing, it was paid at ten per cent. for two years, and interest on interest was paid at that rate, a valid agreement to extend the time of payment so as to discharge the sureties was not proved.

SAME.—*Verbal Agreement.*—A verbal agreement to pay ten per cent. interest in advance upon a note bearing interest at ten per cent. not in

Williams *et al. v.* Boyd.

advance is usurious, and would not have the effect to extend the time for the payment of the note. The holder may maintain an action upon it the day after making the contract.

SAME.—*Evidence.*—*Promise of Surety with Knowledge of Release.*—Evidence of a promise of the surety to pay the note, made with knowledge of all the facts, is admissible; and, though he had been released by an extension of the time for payment of the note, his promise would be binding upon him.

SAME.—*Damages.*—*Attorney's Fees.*—*Evidence.*—Evidence: "I am an attorney at law; on $3,300 I think reasonable attorney fees would be $150," admitted without objection, is proof sufficient to justify a finding of the court for $108.10 as attorney's fees.

PLEADING.—*Cause of Action.*—*Complaint.*—*Cross Complaint.*—The cause of action set forth in a cross complaint must arise upon, or grow out of, the cause of action stated in the original complaint, and not be independent thereof.

From the Wayne Circuit Court.

*C. H. Burchenal,* for appellants.

*W. A. Peelle, D. W. Comstock* and *H. C. Fox,* for appellee.

MORRIS, C.—The appellee sued the appellants upon a promissory note for three thousand dollars, dated May 20th, 1873, due at one day, with interest at ten per cent. after maturity, and attorney fees if suit should be instituted upon the note. The complaint alleged that, at the time the note was executed, the appellants Caleb J. Morris, Richard White, James Williams, John Wallace, Joel Pennington and George W. Callaway, were partners, doing business under the co-partnership name of "Milton Woollen Mill Company," and that they executed the note in their firm name, a copy of which is filed with the complaint. It is further stated that, after the execution of the note, the appellant Charles A. Hill and one Henry Izor, as the plaintiff was informed, became members of said co-partnership; that afterward, on the — day of ——, 1878, the said Izor died intestate, being a partner up to and at the time of his death, and that the appellant Caleb J. Morris and one Aaron Morris were duly

appointed administrators of his estate; that afterward the said Isaac Kinsey and Aaron Morris were, in 1878, by an order of the Wayne Circuit Court, appointed receivers of all the property and effects of the said Milton Woollen Mill Company, who accepted said trust, and entered upon the discharge of their duties, and are still acting as such receivers; that, on the 15th day of November, 1878, Richard White, one of said partners, made an assignment, under the laws of the State, of all his property to the said Kinsey and Aaron Morris, and that, on the 25th of the same month, Caleb J. Morris, another of said partners, assigned his property to the assignees of White, both assignments being made for the benefit of creditors. He prays judgment against Caleb J. Morris, Richard White, James Williams, John Wallace, Joel Pennington and George W. Callaway.

The defendants below, Williams and Wallace, demurred to the complaint. The demurrer was overruled, and they then filed their answer in seven paragraphs. The first was a general denial; the others were special, upon which issues were formed.

Williams and Wallace also filed a cross complaint against all their co-defendants below. The appellant Hill demurred to the cross complaint, on the grounds: 1st, that a demurrer to the appellee's complaint had been sustained in his favor, and judgment rendered for him against the appellee. 2d, because the cross complaint did not state a cause of action against him. 3d, because there was a defect of parties defendants. Kinsey and Aaron Morris also demurred to the cross complaint, both as receivers of the Milton Woollen Mill Company, and as the assignees of White and Caleb J. Morris. And Caleb J. Morris and Aaron Morris, as administrators of Henry Izor, also demurred to the cross complaint. All these demurrers were sustained, and Williams and Wallace excepted.

The cause was submitted to the court for trial. The court

found in favor of the appellee, but also found that the appellants Williams and Wallace were the sureties of Joel Pennington, Caleb J. Morris, Richard White, and George W. Callaway.

Williams and Wallace moved the court for a new trial, on the ground that the finding was contrary to law and the evidence, and because the court erred in admitting certain testimony over their objection, and because the damages were excessive. The court overruled the motion. Judgment was rendered in favor of the appellee, but it provided that the same should be first levied of the property of Pennington, White, Morris and Callaway, subject to execution. Williams and Wallace appealed to this court, serving notice of the appeal upon their co-defendants.

The rulings of the court upon the demurrers to the cross complaint, and the overruling of the motion for a new trial, are assigned as errors. We will first consider the questions arising upon the demurrers to the cross complaint of Williams and Wallace.

The cross complaint admits the co-partnership and the making of the note, as stated in the appellee's complaint. It states that shortly thereafter, in 1873, the cross complainants sold their interest in said co-partnership to their co-partners, who, as a part of the consideration for the sale, assumed and agreed to pay all the debts and liabilities of the firm, including the note in suit; that Morris, White, Pennington and Callaway formed a new company, adopting the name of the old firm, and continued the business; that the appellee had notice of all this; that afterward, on the —— of ——, 1874, the said Joel Pennington sold his interest in the assets of said firm to the said Charles A. Hill, who, in consideration thereof, agreed and promised to pay and become liable for all the debts of said firm, including said note; that he became a member of said firm, which was continued under the name aforesaid; that afterward, in

1876, the said Callaway sold his interest in said firm to one Henry Izor, who became a member of said firm, and, in consideration of said sale, assumed and agreed to pay the debts of said firm, including said note; that Izor died intestate in 1878, and that Caleb J. and Aaron Morris were duly appointed his administrators; that, in 1879, the firm being insolvent, certain proceedings were instituted in the Wayne Circuit Court, which resulted in the appointment of Kinsey and Aaron Morris as receivers of all the assets of said firm; that they accepted the appointment, and were then in the discharge of their duties as such receivers. It is also stated that White and Caleb J. Morris, who had been members of all of said firms, made assignment of all their property, under the statute of the State, to said Kinsey and Morris, the receivers of the firm, for the benefit of their creditors. It is also stated that the firm was insolvent.

The prayer of the cross complaint is, that the relations, rights and equities of the several parties to the cross complaint, growing out of said transactions, be determined by the court; that it be adjudged that Williams and Wallace stand as sureties to all the other defendants, and the interests represented by them as to the note in suit; that, if judgment be rendered in favor of the appellee, the court shall order that the property of Hill and Pennington be first subjected to its payment, and that the means in the hands of the administrators of Izor, and in the hands of the receivers of the Milton Woollen Mill Co., and in the hands of the assignees of White and Caleb J. Morris, be ascertained and applied in payment of any recovery on said note, in such way as may be just and equitable.

We think that, when Williams and Wallace withdrew from said firm, the continuing partners, by assuming and agreeing to pay its debts, as stated in the cross complaint, became primarily liable for the note in suit, and that, as between them and Williams and Wallace, the latter must be regarded

as the sureties of the former.  In the case of *Colgrove* v. *Tallman*, 67 N. Y. 95, this precise question was decided.

The court says: "By the dissolution of the co-partnership, of which Barnes and Tallman were the members, and the transfer of all the property to Barnes, and his agreement with Tallman to pay all the debts of the firm ; Tallman became in equity, as between himself and Barnes, a surety, for Barnes as principal debtor in those debts." The court further says : "When it was made known to Colgrove by Tallman, that Barnes' and Tallman had gone into the bargain, which was thus made between them, Colgrove became bound to Tallman in equity to observe it."

Brandt, in his work on suretyship, etc., says : "When one member of a partnership retires from the firm, and the remaining members agree with him to pay the firm debts, and these facts are known to the creditor, the member so retiring will be considered, in law, a surety." Sec. 23. *Oakeley* v. *Pasheller*, 10 Bligh N. S. 548 ; *Smith* v. *Shelden*, 35 Mich. 42.

It is alleged in the cross complaint, that Charles A. Hill purchased the interest of Pennington in said firm, became a member of the firm, and, in consideration of the transfer of Pennington's interest to him, agreed to pay the debts of the firm, including the note in suit.    Hill succeeded to the rights of Pennington, which included the interests transferred to him as a member of said firm by Williams and Wallace. By this arrangement, Hill and his partners became bound to Pennington to pay the debts of said firm within a reasonable time, and, for a failure to do so, Pennington could maintain an action against them.    But a recovery for such failure by Pennington would operate in favor of the creditors of the firm, and he, as to such recovery, would be held to be their trustee.    So, too, by the agreement of the continuing members of the firm with Williams and Wallace, the former were bound to pay the note in suit, and, for a failure to do so, the latter might maintain an action against them.

By such failure to perform their agreement with Williams and Wallace, the latter became, in a certain sense, the creditors of the firm; and, being such creditors, they could maintain an action upon the undertaking of Hill and his partners, made for the benefit of the creditors of the firm. It is upon this view of the rights of the parties that the cross complaint must be sustained, if at all.

But the contracts of Hill and Izor, on which the cross complaint rests, are independent of, do not arise upon, or grow out of the cause of action stated in the appellee's complaint. The undertaking of Hill and of Izor originated long after and independent of the execution of the note in suit. They had the same relation to, and were not otherwise connected with the note sued on, than would have been any other person, who had agreed, upon a sufficient consideration, to pay said note. It would hardly be pretended that if a person, not a partner in said firm, had promised the appellants Williams and Wallace, to pay said note, they could, when sued by the payee, bring such person into the suit by cross complaint, and, in such action, litigate the question as to whether such person had assumed and agreed to pay said note. In this case Boyd, the appellee, states no cause of action against Hill or the receivers or the assignees of White and Morris, nor against the administrators of Izor; nor does he ask or take judgment against them. We are, therefore, of opinion, that the facts stated do not constitute a valid cause of action by way of cross complaint against Hill nor against any of the defendants thereto, and that, therefore, the court below did not err in sustaining the several demurrers to it.

The appellants insist that the court erred in overruling their motion for a new trial:

1st. Because the finding is contrary to law;

2d. Because the finding is contrary to the evidence;

3d. For errors of law occurring at the trial;

4th. Because the damages are excessive.

It is insisted that Williams and Wallace, being the sureties of White, Morris, Pennington and Callaway on the note in suit, from the time they sold to them their interests in the firm, upon the agreement that these continuing partners should pay its debts, were released as such sureties by an agreement between the latter and the appellee, extending the time for the payment of the note. The evidence shows that, in 1873, soon after the execution of the note, Williams and Wallace retired from the firm, and that the continuing members White, Morris, Pennington and Callaway, assumed and agreed to pay its debts, and that the appellee had notice of this arrangement. The evidence further shows that, from the time Williams and Wallace retired, the new firm paid the appellee twelve per cent. interest per annum on said note until 1875, when the parties met and made a new verbal arrangement in regard to the interest. Callaway testified, and his testimony is in substantial agreement with that of the appellee, as follows: "In 1875, I told Boyd, the appellee, that twelve per cent. was too much, and that if he did not reduce the interest we would have to try and pay off the note; he said twelve per cent. was a little high, and that he would make the interest the same as bank interest—ten per cent. in advance, and if we did not want to pay the interest in advance, we could keep the interest and pay him interest on that interest; I told him then we would keep it in that way; interest was to be paid annually." At the expiration of a year from this time, the interest not having been paid, Boyd told the company they could keep the interest and pay interest upon it. At the expiration of the second year, the company, pursuant to this agreement, paid Boyd the interest upon the two years' interest due, making it the same as if it had been paid in advance.

Was this agreement valid and binding upon the parties to it? and did it have the effect to extend the time for the pay-

ment of the note? If it did, Williams and Wallace were re-
leased. If it did not, they remained liable on the note.

The interest stipulated for in the note is ten per cent. per
annum, not payable in advance. If the verbal agreement
did not increase the rate of interest, it could have no effect
upon the note. It is obvious, however, that an agreement
to pay ten per cent. interest per annum, not in advance, and
an agreement to pay the same rate of interest per annum,
in advance, are different and distinct agreements. The agree-
ment proven was, therefore, different, as to interest, from
that contained in the note.

The parties, by the law then in force, might lawfully con-
tract in writing for ten per cent. interest per annum, pay-
able at the end of the year, or when the principal should be-
come due, or in advance. But such contract, if not in writing,
would be usurious and void as to the excess over and above
six per cent. Verbally, parties can not lawfully contract
for a higher rate of interest than six per cent. per annum.

It is said by counsel for the appellants that Boyd's agree-
ment was to extend the time of payment, in consideration
that the makers would pay him interest on the interest stip-
ulated for in the note, and that this was valid. The state-
ment of counsel is equivalent to saying that Boyd agreed to
extend the time, in consideration that the makers would pay
him for forbearance, in addition to the ten per cent. men-
tioned in the note, a sum equal to ten per cent, on three
hundred dollars, that being the annual interest, at ten per
cent., on the note. Such an agreement, to be valid, must
be in writing.

We think, therefore, that the verbal contract to pay ten
per cent. interest per annum in advance was usurious, and
that it did not have the effect to extend the time for the pay-
ment of said note. Boyd might have maintained a suit upon
it the day after the making of the contract. *Brown* v. *Har-
ness*, 16 Ind. 248; *Shaw* v. *Binkard*, 10 Ind. 227.

The court permitted the appellee to prove on the trial,
over the objection of the appellants, that Williams had stated
to the appellee, after the facts were known to him, that he
would pay the note in full.   It is insisted that, in admitting
this evidence, the court erred.  We think there was no error
in admitting the evidence.   It tended to show a promise on
the part of Williams to pay the note.  Such a promise, made
with knowledge of all the facts, though he had been released
by an extension of the time for payment of the note, would
be binding upon him.  Brandt Suretyship, etc., sec. 300 ;
*Smith* v. *Winter*, 4 M. & W. 454 ; *Porter* v. *Hodenpuyl*, 9
Mich. 11 ; *Mayhew* v. *Crickett*, 2 Swanst. 193.

It is objected that the damages are excessive ; that too much
—$108.10—was allowed as attorney fees.   A Mr. Stubbs,
without objection, testified as follows :   "I am an attorney
at law ; on $3,300 I think reasonable attorney fees would be
$150." We think this proof justified the finding of the court.
The court did not err in overruling the motion for a new
trial.   The judgment should be affirmed.

Per Curiam.—It is ordered, upon the foregoing opinion,
that the judgment below be affirmed, at the costs of the ap-
pellants Williams and Wallace.