PERKINS *v.* CHENEY.

1. GUARDIAN AND WARD — BOND—LIABILITY OF SURETIES — DIS-
CHARGE OF GUARDIAN—STATUTE OF LIMITATIONS.

A guardian is "discharged," within 2 How. Stat. § 6332, pro-
viding that no action shall be maintained against the sureties
on a guardian's bond unless commenced within four years
from the time the guardian is discharged, whenever the guar-
dianship is in any manner effectually determined and brought
to a close, whether by the removal, resignation, or death of
the guardian, the marriage of a female guardian, the arrival
of a minor ward at the age of 21 years, or otherwise.

2. SAME—ACCOUNTING—PARTIES.

A surety on a guardian's bond does not conclusively admit
his liability on the bond by voluntarily becoming a party to
the proceedings upon an accounting to determine the amount
due from the guardian to his ward.

3. SAME—LEAVE TO SUE—RES JUDICATA.

An order of the probate court granting leave to sue a guar-
dian's bond is not *res judicata* of the sureties' liability.

4. SAME—ESTOPPEL.

On application by a guardian's bondsman to perfect an appeal
from the guardian's accounting, the court made an order
denying the ward's request that the appellant be required to
give bond to pay any sum found due the estate, as an action
on the bond might be barred, "on the grounds that, in the
opinion of the court, the action would not be barred, and
also, in his opinion and judgment, it is not required in the
interest of justice, nor for the protection of the estate."
*Held,* that such order did not estop the bondsman from plead-
ing the bar of the statute of limitations, which was complete
before such appeal.

5. LIMITATION OF ACTIONS—PRINCIPAL AND SURETY — NEW PROM-
ISE—CONSIDERATION.

The duty resting upon a surety to see that his principal per-
forms the contract guaranteed subsists as a moral obligation
after the statute has run against the right to enforce it, and
will support a new promise by the surety to answer for the
principal's default.

6. SAME — VERBAL ACKNOWLEDGMENT—STATUTES.

 2 How. Stat. § 8725, which operates to exclude the efficiency of a mere verbal acknowledgment to renew a liability barred by the general statute of limitations (2 How. Stat. chap. 302 ), applies only to those cases within the provisions of such statute, the cases not within its provisions being governed by the common-law rule.

7. SAME.

 The verbal promise of a surety on a guardian's bond that he will pay whatever is found due from the guardian is sufficient to remove the bar of the statute.

Error to Kent; Adsit, J. Submitted April 30, 1897. Decided October 25, 1897.

*Assumpsit* by Cyrus E. Perkins, probate judge of Kent county, for the use and benefit of May Cheney Hinman and Elsby Cheney, against Zerah V. Cheney, as surety on the guardian's bond of Amherst B. Cheney, impleaded with Edwin Bradford, co-surety, and said Amherst B. Cheney. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*G. A. Wolf* and *G. Fitz Gerald* (*W. W. Hyde*, of counsel), for appellant.

*Myron H. Walker* (*Loyal E. Knappen*, of counsel), for appellee.

MONTGOMERY, J. This is an action on a guardian's bond. Nehemiah E. Cheney died, intestate, on March 7, 1880, leaving a widow and two children,—May Cheney, since married, and referred to in this record as May Cheney Hinman; and Elsby Cheney, then aged three years. Amherst B. Cheney was appointed administrator of the estate of Nehemiah, and on October 8, 1880, on petition of the widow, Mrs. Nettie Cheney, Amherst B. Cheney was appointed guardian of the minors, and gave the bond in suit, with his brother Zerah V. Cheney and Edwin Bradford as sureties. In the fall of 1893, Amherst B. Cheney failed in business, and was at the time largely

indebted to the minors. Up to this time no account had been filed by Amherst B. Cheney as guardian or as administrator. On May 26, 1894, May Cheney Hinman filed a petition in the probate court, praying that the guardian be required to render an account. A citation was issued on this petition, but no account appears to have been filed in response to the petition. A second citation was issued, returnable October 3, 1894. On October 31, 1894, the guardian filed his account. At the same time, he voluntarily filed his account as administrator. Objections and surcharges were filed to both accounts, and the hearing was had on them together, on the 18th of December, 1894. On April 11, 1895, the judge of probate rendered his decision, finding nothing due from Cheney as administrator, but finding that there was due to his wards the sum of $1,389.80.

Steps were taken to appeal from this determination, but, the appeal not having been perfected within the 30 days required by the statute, the minors filed a petition for leave to sue the bond. A citation was issued on this petition, and on the 18th day of July, 1895, an application was made to the circuit court for leave to perfect the appeal from the order determining the amount due the wards on the accounting. This application was in the name of Amherst B. Cheney, but on such application Zerah V. Cheney presented his own affidavit and the affidavit of his attorney, M. H. Walker, from which it appears that Zerah V. Cheney had employed Mr. Walker to prosecute the appeal; and A. B. Cheney, in his own petition, swears that said petition was in fact being prosecuted by Zerah V. Cheney, his bondsman, at his own expense, and that the proceedings were under his control, and under the control of Walker, his attorney. On the hearing of this application, leave was granted to perfect the appeal. The appeal was thereupon taken, and upon the 2d of May, 1896, the decision of the circuit judge was entered on this appeal, but the findings were not finally settled until the 15th of May. On the 28th of May, 1896,

the amended findings were certified to the probate court. On the 29th of May, 1896, the wards filed a petition for the removal of A. B. Cheney as guardian. On the hearing of this petition, Mr. A. B. Cheney filed his resignation. On the 6th of June, 1896, the wards filed a petition for leave to sue the bond. A citation was served upon Zerah V. Cheney, who appeared by counsel, and opposed the granting of an order for leave to sue the bond; but, notwithstanding the opposition, the leave was granted, and this suit instituted. On June 20th the present action was commenced. The defendant subsequently paid the amount decreed as due to the ward Elsby, and the case has proceeded in the interest of May Cheney Hinman. The defendant Zerah V. Cheney interposed the plea of the statute of limitations to this claim, and, at the conclusion of the testimony, the circuit judge directed a verdict in his favor. As no defense was interposed by A. B. Cheney, judgment was directed against him.

The statute upon which this action of the circuit judge was based is section 6332, 2 How. Stat., which provides that no action shall be maintained against the sureties on any bond given by a guardian, unless it be commenced within four years from the time when the guardian shall have been discharged. This is subject to exceptions not material to be noted here. Three reasons are urged against the ruling of the circuit judge:

(1) That, under the circumstances of the case, the statute had not run when the suit was brought.

(2) That the surety, having become a party to the accounting proceedings, is bound by the orders and final decree therein, and is concluded by the decision of the probate judge, who directed that an action might be brought upon the bond, in the face of the contention that the statute of limitations had run.

(3) That there was a new and sufficient acknowledgment and promise by the surety to revive and retain his liability.

1. The first proposition depends upon the construction which, under the authorities, must be given to the statute,

and this is not an open question in this State.   The statute
was borrowed from Massachusetts, and in *Loring* v. *Al-
line,* 9 Cush. 70, it was held that by the term "discharged,"
in this statute, is intended any mode by which the guar-
dianship is effectually determined and brought to a close,
either by the removal, resignation, or death of the guar-
dian, the marriage of a female guardian, the arrival of a
minor ward at the age of 21, or otherwise.   The same con-
struction has been given in our State.   See *Cheever* v.
*Congdon,* 34 Mich. 296; *Ottawa Probate Judge* v.
*Stevenson,* 55 Mich. 320.   See, also, *Paine* v. *Jones,* 93
Wis. 70.

2. It is claimed that Zerah V. Cheney voluntarily be-
came a party to the accounting proceedings, submitted
himself to the jurisdiction of the court, and that he cannot
now be permitted to escape liability under the decree,
which, it is contended, was rendered as much against him
as against the guardian.   We think this contention can-
not be allowed.   The proceeding on the accounting was
one to determine the amount due from the guardian to his
wards.   Whether liability existed upon the bond was not
determined in that proceeding.   The bare fact that the
surety took part in that proceeding could not be taken as
a conclusive admission of liability upon the bond, particu-
larly as he was admittedly liable for so much as was found
to be due to Elsby Cheney, who was still a minor.   The
question of whether the statute of limitations had run in
favor of the bondsmen was not one which the court had
the opportunity to pass upon in that proceeding.   See 2
Black, Judgm. § 589.

It is further contended that the order of the probate
court granting leave to sue the bond is *res judicata* of
the defendant's liability.   But this court has held other-
wise.   See *Hilton* v. *Briggs,* 54 Mich. 266; *Landon* v.
*Comet,* 62 Mich. 83; *Schlee* v. *Darrow's Estate,* 65
Mich. 362; *Welch* v. *Van Auken,* 76 Mich. 467.   It may
be added that the order of the probate judge simply de-

termined that the petitioners were "entitled to bring suit upon the bond."

3. It is further contended that the defendant is estopped by the decision of Judge Adsit, on the application for leave to appeal from the accounting. On the presentation of the application for leave to appeal, and during the hearing, counsel for Mrs. Hinman stated, as one reason why an appeal ought not to be allowed, that the statute of limitations had run out, and that he thought, as a condition to permitting the appeal, a new bond should be required. Mr. Walker, who represented Zerah V. Cheney, said that he did not understand that the statute of limitations would run until the expiration of 10 years, the bond being a sealed instrument. Mr. Wolf, who appeared for Mrs. Hinman, then called attention to the statute (section 6332); and it was stated by Mr. Walker, as appears by plaintiff's testimony, that it did not make any difference, that they (defendants) did not intend to plead the statute of limitations, and that they would pay whatever the court found was due. The court made an order permitting an appeal, in which was the following:

"And it is further ordered that the request of appellees that, as a condition of allowing this appeal, appellant be required to give bond to pay any sum found due said estate, as an action on the guardian's bond may be barred, be, and the same is hereby, denied, on the grounds that, in the opinion of the court, the action would not be barred, and also, in his opinion and judgment, it is not required in the interest of justice, nor for the protection of the estate."

The most that can be said is that the judge proceeded upon a mistaken view of the law. This order does not indicate that the judge would have refused leave to appeal had he entertained the opinion that the action was barred, but that he might have ordered an additional bond. Nor does it appear that, as to the statute of limitations, Mrs. Hinman was in a worse situation after the order allowing an appeal than before, as, in the absence of any new promise, the statute of limitations had run at the time the

order was made.   We think it cannot be said that there was any estoppel upon this question.

4. A question of more difficulty is whether a new promise was shown to have been made by the defendant Zerah V. Cheney.   The circuit judge seemed to be of the opinion that a new consideration must be shown in order to support a new promise.   It is conceded by counsel that, as to one liable upon an obligation as principal, the original consideration may support a promise which revives the action.   But it is contended that the consideration for this new promise rests upon the moral obligation of the principal to pay the debt, and it is said that no moral obligation rests upon the surety to discharge the obligation; that he is entitled to stand upon his strict legal rights.   It may be said with truth that there is no breach of morals involved in a surety's insisting upon his strict legal rights, and refusing to pay except upon such conditions as the law affixes to his undertaking for his benefit.   But we cannot give our assent to so broad a proposition as that the surety is under no moral obligation to see that his principal fulfills a contract which the surety has guaranteed.   Both principal and surety may, after the lapse of six years, be legally discharged.   Both have been under the moral obligation to make payment of the indebtedness, and either alike may, we think, renew such obligation after it has become barred, upon the consideration of the pre-existing legal obligation, which the law recognizes as a still subsisting moral obligation.   No authority is cited which sustains the holding of the learned circuit judge.   In the analogous case of a waiver of conditions upon which the liability of a surety depends, it has been repeatedly held that such waiver may occur after a failure to comply with the conditions, and that such waiver or new promise requires no new consideration to support it.   *Porter* v. *Hodenpuyl*, 9 Mich. 11; *Parsons* v. *Dickinson*, 23 Mich. 56; *Tebbetts* v. *Dowd*, 23 Wend. 379; 2 Rand. Com. Paper, § 953. We think the court was in error on this point.

But it is contended by defendant's counsel that there was no evidence which, fairly construed, tends to show such a new promise or acknowledgment as will operate to take the case out of the statute. It is to be borne in mind that this is a statute by itself, and that the acknowledgment which shall take the case out of the statute is such a one as is required under the common-law rule, and there is no limitation upon that rule by statute. The general statute (2 How. Stat. § 8725), which excludes from the saving provisions any verbal agreement, applies only to those cases within the provisions of chapter 302. At the common law, a verbal acknowledgment is sufficient to revive a liability barred by the statute.    Brandt, Sur. § 65; Browne, St. Frauds, § 137.

Mrs. Nettie Cheney testifies that in January, 1894, she sent for defendant to come to her house, and that defendant said "that he would pay us what there was coming from the estate, from A. B." Elsby Cheney testifies that on one occasion Zerah V. Cheney told him that, "when we found out whatever there was in the estate, he stood ready to pay it." Other promises were testified to, but they were, according to the testimony of the witnesses, conditional upon the parties waiting the result of certain embezzlement cases pending against A. B. Cheney,—a condition which was not complied with. Such promises were not sufficient to remove the bar of the statute, unless the conditions named were complied with; but the promises claimed to have been made to Mrs. Nettie Cheney in January, and to Elsby, were, if the jury should find them to have been made, sufficient to take the case out of the statute. The force of this testimony was very much weakened in each case on cross-examination, but we are not prepared to say that the testimony of each witness, taken as a whole, did not authorize the finding of a promise. This question should have been submitted to the jury.

Judgment reversed, and a new trial ordered.

LONG, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.