THE PEOPLE OF THE STATE OF NEW YORK, APPEL-
LANTS, v. THOMAS W. CUSHING, RESPONDENT.

36 483
48ap163

36h 483
168 NY ³547

*Surety upon a bond—effect of the acceptance from the principal of a new bond—when
the sureties upon the first bond will still continue liable.*

In 1880, the canal board, in accordance with its usual custom, designated as one
of the banks to receive the deposits of the State moneys the First, National
Bank of Buffalo. On March 30, 1880, the defendant, with other persons,
executed a valid agreement, joint and several in form, to the people, covenant-
ing and agreeing that the bank should well and faithfully do and perform all
things contained in an agreement made by it with the State as to such deposits,
and well and faithfully account for and pay over all moneys on deposit in the
bank at the time of the execution of the bond, or due or to become due there-
from to the people of the State of New York. There was then on deposit in
the said bank to the credit of the State the sum of $5,000, and at the end of
the year there was a balance due the State of $73,000.

March 31, 1881, the bank was again designated to receive the deposits, and an
agreement similar to the first was prepared and executed by all of the former
sureties except the defendant in this action, and by one new surety. On
December 31, 1881, the balance due the State was $70,422. The bank having
become insolvent in April, 1882, this action was brought against the defendant,
upon the bond executed by him, to recover the amount due to the State on
account of the moneys so deposited.

*Held,* that in the absence of any evidence to show that the second bond was
accepted as a compromise of its claim by the State under the first bond, or
that the first bond was surrendered or canceled, the acceptance of the second
bond did not discharge the defendant from any liability incurred by him
under the first.

*Quære,* as to whether, without some express authority, the canal board could
release and discharge a person so indebted to the State.

APPEAL by the people from a judgment, entered against them in
favor of the defendant Cushing, upon the report of a referee,
dismissing the plaintiff's complaint.

This action was brought upon a bond executed by the defendant
Cushing, and others, as sureties for the First National Bank of Buf-
falo, which was designated in 1880 as a depositary for moneys col-
lected for canal tolls in the city of Buffalo. By the provisions of
the bond the bank was required, among other things, to transmit to
the auditor a statement of the account between the bank and the
State treasurer at the close of every month, and to pay for the use

of the deposits interest at the rate of three per cent per annum, to commence on the twenty-first day of the month during which the deposits were made, and also at all times to honor upon sight the drafts of the State treasurer for all or any part of the deposits the State might have on hand to his credit, and also to render to the auditor on the first day of July of each year, and as often as might be required, a detailed statement of the account between the treasurer and the bank, and the commissioners of the canal fund might require payment of all moneys on deposit in the bank at any time when required, or when they should deem the same insecure. By the last paragraph of section six of the contract the bank was allowed at all times to pay the said deposits into the banks in the city of Albany in which the deposits of canal fund money were for the time kept.

*D. O'Brien,* attorney general, for the People.

*David F. Day,* for the respondent.

LEARNED, P. J. :

The principal question arises as to the effect of the taking and acceptance by the State of the bond of 1881; whether that discharged the defendant from the liabilities then accrued on the bond of 1880. The canal board annually designated banks for the deposit of tolls. The banks thereupon severally entered into an agreement with the State; and to that agreement a bond was attached, signed by sureties.

In accordance with this custom the First National Bank of Buffalo was designated. And thereupon it executed an agreement to the people, dated March 30, 1880. The defendant, with others, executed a bond (or sealed agreement), joint and several to the people of the same date that the bank should do and perform all things contained in the contract on its part to be done and performed; would well and faithfully account for and pay over all moneys deposited with it, or for which it shall become liable in and by said contract, and that the bank should account for and pay over all moneys now on deposit in said bank, or due or to become due therefor to the people.

There was then on deposit $65,000. During the year 1880, the

bank received $73,569, which, with interest, $2,755.03, made the total amount $141,324.03. During the year the treasurer drew out $68,323.03, leaving the balance due the State $73,001. March 31, 1885, the bank was again designated, and thereupon executed another and similar agreement, dated March 31, 1881, with a similar bond or sealed agreement, executed by all of the former sureties except Cushing, and also executed by one Henry Zink.

When this was executed there was on deposit, of canal moneys, to the amount of $73,000.01. During 1881 there was deposited $32,421.46 and drawn out by the treasurer $35,000, leaving a balance December 31, 1881, of $70,422.46. The bank became insolvent in April, 1882, owing that amount at least. These amounts are believed to be accurate. But for the purpose of this present question, it is not material whether they are precisely correct or not. The defendant Cushing claims that by the acceptance of the bond of 1881, he was discharged from any liability under which he may have been on the bond of 1880, and so the learned referee held. It is not claimed that there was any surrender or cancellation of the bond of 1880. But it is claimed that the transaction operated as an accord and satisfaction. Nor is it claimed that the canal board, by any written or verbal contract with the defendant or with the bank, agreed to release him from his liability upon receiving another bond signed by the remaining sureties and by Mr. Zink. Indeed, it is doubtful whether, without some express authority, the canal board is authorized to release and discharge one who is indebted to the State in this manner. And certain it is that there is no evidence that they agreed to do this. The defendant's claim rests simply on the position that by taking the bond of 1881, which they might lawfully take, they discharged him.

Several cases cited by the defendant's counsel are on the point that where there is an actual agreement to compromise a claim, there additional security from a third party constitutes a sufficient consideration to support the agreement, a point which is undoubtedly sound. In *Rush* v. *Soutter* (67 Barb., 371) the old security had been surrendered on receiving the new. In *Nevins* v. *Depierries* (1 Ed. Sel. Cas., 196), and in *Luddington* v. *Bell* (77 N. Y., 138), and in *Keeler* v. *Salisbury* (33 id., 648), there was an agreement to compromise. In *Lawrence* v. *Barker* (9 Daily, 140) defendant

swore to such an agreement and it was held to be a question for a jury.   In *Frisbie* v. *Larned* (21 Wend., 450) the note of a third person with a small payment in cash was credited on the account, and the account against the dissolved firm was balanced.   The note was received from the par.:er who was to pay the debt.   It was held that the note was payment, not security.

Now, it may be admitted that a creditor may compromise his claim and take a less amount, and that additional security will be a sufficient consideration.   But in such cases there is an actual agreement to compromise, and the only question is whether the agreement is binding.   There was no such agreement in this case.

The defendant's counsel cites the language of the learned referee, that " when a new contract, co-extensive with an existing one, is made, whereby the creditor secures further and additional rights, or security from a third person for the same debt is accepted by the creditor for and in lieu of the old one, the new operates as an accord and satisfaction of the old."   Admitting that to be an accurate statement of law, it does not apply.   One point in dispute here is, whether the bond of 1881 *was accepted for and in lieu* of that of 1880.   Besides, the new contract was not co-extensive with the old.   The obligors in the new were not liable for failures of the bank to perform its contract during 1880, although they may have been liable to pay the balance due at the end of the year 1880.   And the language cited from Judge EDMONDS, in *Nevins* v. *Depierries*, touched only on the question of consideration for a compromise, not on the question of the existence of a compromise, or the implication of an accord from the acceptance of new security.

But to test the correctness of the principle asserted by the counsel for the defendant, let us suppose that a debtor gives a bond and mortgage to his creditor ; that afterwards for the same debt (or for the same with an additional debt) he gives another bond and mortgage upon other property ; is the new an accord and satisfaction of the old ?   Yet the new contract is co-extensive with the old and the creditor has secured further rights.   Now, it is very likely true that if a new contract is accepted by the creditor *for and in lieu* of the old, the old is discharged.   If the new is taken in lieu of the old, that means that the old is given up.   But that is the very question in dispute.   Was the bond of 1881 taken in lieu of that

of 1880 ; or was it taken as an independent contract in respect to moneys thereafter to be received and as additional security in respect to moneys then on hand. For the complaint claims only for the amount on hand March 30, 1880, and the deposits during 1880 less the amounts paid the State. And, therefore, it seems that the plaintiffs do not insist that the defendant is liable for deposits made after the giving of the bond of 1881. But at the time that bond of 1881 was given, the defendant was liable to the State upon the bond of 1880 for moneys actually received on deposit by the bank and not paid over. Nothing further was necessary to maintain an action unless perhaps a demand upon the bank and a refusal. (See, however, as to this necessity the last sentence of the sixth item of the contract between the bank and the people.) The defendant, at that time, might have availed himself of the privilege of a surety as laid down in *Colgrove* v. *Tallman* (67 N. Y., 95) and in similar cases. Thus he might have secured himself against the danger into which he has now fallen. The State then designating the bank again as depositary took security for the faithful discharge of its duties. If this had been all, there would be hardly room for the defendant to deny his liability. But in this new security taken by the State there is a clause making the sureties liable also for the money then on deposit, for which, as we have seen, this defendant was already liable. Now, for what reason should this act discharge the defendant? He is in no way injured. Probably he is benefited by having a right of contribution against the new surety. At any rate, without some distinct agreement to that effect, we cannot see that the mere acceptance of additional security released the surety. Suppose that the State had induced the bank to give, in April, 1881, a mortgage to secure the amount then on deposit. Would that mortgage have released the defendant? We are therefore of the opinion that the acceptance of the bond of 1881 did not discharge the defendant from the liability which then existed against him on the bond of 1880.

After the bond of 1881 was executed, the bank received and paid out moneys. If the sureties on that bond had made themselves liable only for the moneys to be received after its execution, then for their protection the rule that payments are to be applied

488    PEOPLE ex rel. EDEN MUSEE AM. CO. v. CARR.

THIRD DEPARTMENT, MAY TERM, 1885.

to the earliest items would probably have been modified. So that payments made by the bank during 1881 would have been applied to discharge liabilities incurred during that year. But we have already seen that the bond included an agreement to secure the payment of the moneys already on deposit. Hence the sureties on the bond of 1881 would not be benefited by such a modification of the ordinary rule of application of payments. The defendant therefore may justly urge in his favor that the payments of 1881 be applied to the balance existing at the beginning of the year, being the earlier items of the account.

The judgment should be reversed, new trial granted, referee discharged, costs to abide event.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Judgment reversed, new trial granted, referee discharged, costs to abide event.